IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**RECEIVED**

NOV 21 2007

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| **KENDRICK L. DORTCH, and** ) | |
| **RICHARD THOMAS, as owner of the** ) | |
| **ROSE SUPPER CLUB,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 2:07-CV-1034- |
| ) | |
| THE CITY OF MONTGOMERY, and ) | **JURY DEMAND** |
| LT. L.C. CREMEENS, ) | |
| ) | |
| Defendants. | |

## COMPLAINT

NOW COME plaintiffs, KENDRICK L. DORTCH and RICHARD THOMAS, owner of the ROSE SUPPER CLUB, and make the following Complaint.

### I. Introduction

The complaint seeks to recover damages, secure equitable and other relief, and to redress the deprivation of rights and privileges of a citizen of the United States. This action arises under the United States Constitution, particularly, the Fourth and Fourteenth Amendments, and under the laws of the United States. The Plaintiff seeks redress via 42 U.S.C.A. §§ 1983 and 1988. Plaintiffs invoke pendant jurisdiction of their state tort claims.

### II. Parties

1. Plaintiff Kendrick L. Dortch (Dortch) is an African American and is a resident of Montgomery, Alabama; he is over the age of 19 years.

2. A resident of Montgomery, Richard Thomas (Thomas) is an adult

African American and is the owner of the Rose Supper Club, a nightclub located in the City of Montgomery.

3.   Defendant L.C. Cremeens (Cremeens) is employed as an officer with the Fire Department of the City of Montgomery. He is sued in his individually. At all times relevant he acted under color of state law as an officer for the City of Montgomery.

4.   The City of Montgomery (City) is a municipal corporation, organized and existing under the laws of Alabama.

### III. Jurisdiction and Venue

5.   This Court has jurisdiction of the claims pursuant to 28 U.S.C. § 1331, in that the action arises under the laws of the United States and pursuant to 28 U.S.C. § 1343, in that the action seeks to redress the deprivations of rights and privileges secured by the Constitution and laws of the United States. Jurisdiction over the state torts is conferred by the doctrine of pendent jurisdiction as those claims arise from the same common nucleus as the federal claims.

6.   Venue is proper in that the claims arose in this judicial district; the Rose is located in Montgomery, Alabama, Dortch and Thomas are residents of Montgomery, and defendant L.C. Cremeens reside in this district; the City is located in this district, and a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in this district.

### IV. Background

7.   Although the State of Alabama has not made overcrowding in business establishments a criminal offense, and the City has not passed an ordinance making overcrowding a criminal offense, there exists a policy on the part of the fire marshal to

2

regularly, as a mater of course, cite only owners of nightclubs for overcrowding and to charge them or their employees criminally. The City then tries these cases in the Municipal Court of Montgomery, Alabama.

8.  The City attempts to rationalize its policy or custom on the basis that it is within its police power to close nightclubs that are over capacity—overcrowded—and they are closed, therefore, for safety reasons. However, the City has a policy where it usually limits the enforcement exclusively to closing nightclubs. For example, the City jail is constantly over-capacitated, overcrowded, as well as the County jail. However, neither has been criminally cited for overcrowding. Also, the City Council meeting hall is often overcrowded, but the City has never issued a citation for it to be criminally cited for being over capacity. No restaurant has been closed for overcrowding.

9.  The City of Montgomery has adopted and ratified the action of the fire marshal by choosing to prosecute overcrowding charges as criminal offenses in its municipal court. By charging these nightclub owners with a criminal offense of overcrowding and prosecuting them for this offense, the City can assess a $500.00 fine and court costs, and sentence them to jail. Often, these owners do not contest the charge, but rather plead guilty, get convicted, pay a fine and cost costs. The conviction remains on the record as a criminal conviction.

10. Each Thanksgiving, in the City, Tuskegee University and Alabama State University play a football game commonly known as the "Turkey Day Classic." During the Thanksgiving Holiday, alumni and supporters from each university flood the City. The whole week of Thanksgiving is quite festive, and most of the African American nightclubs are crowded, as well as most of the hotels and motels in the City.

## V. Facts

11. On Thanksgiving Day, November 24, 2005, the Dortch worked at the Rose. The patrons who visit the Rose are almost exclusively African Americans.

12. In the early morning hours of November 25, 2005, a little past midnight, while Dortch was working at the Rose, Cremeens, an officer with the City Fire Department, came to the Rose, did a walk through inspection, and ordered all patrons to exit the club, and closed it. Also, Cremeens did the same at two other African American nightclubs, Diamonds and the Cotton Club, arrested an employee at each, and ordered them closed until that charge had gone to court. The patrons who visit these two clubs are almost exclusively African American

13. Despite the fact that Dortch was not the owner of the Rose, had not allowed anyone to enter the Rose, and Cremeens had not witnessed Dortch committing any criminal act, Cremeens requested Dortch to provide to him his name, demanded his driver's license, and cited Dortch criminally for "overcrowding."

14. Contemporaneously, Cremeens ordered the Rose closed until Dortch had "gone to court" on the overcrowding charge.

15. Subsequently, by written correspondence dated November 29, 2005, and served on Thomas November 29, 2005, in court, J.R. Amsler, the then-Fire Marshal for the City, informed Thomas and Dortch that the City, through its mayor and the City of Montgomery Fire Marshal's Office, was ordering the Rose to remain closed until the next council meeting, which was to be held on December 6, 2005.

16. `On the orders of Mr. Cremeens, Mr. Amsler, and the mayor, all acting as

officials of the City of Montgomery, the Rose Club was not open during the weekend of the Thanksgiving Holiday; nor was it open days following that holiday weekend, even though the Rose is always open on Sundays. The Rose remained closed on the orders of the city officials for approximately seven days.

17. Prior to Dortch proceeding to court on the charge of overcrowding, the City Council of Montgomery, called an emergency session to determine if the Rose should remain closed until Dortch had resolved his criminal charge in court. After the hearing had been concluded, the City Council allowed the Rose to reopen.

18. Subsequently, Dortch was summoned to court to defend a criminal charge of overcrowding.

19. The charge against Dortch proceeded to court in the Municipal Court of Montgomery. Through counsel, Dortch moved for dismissal and informed the court, the prosecution, and defendant Cremeens that overcrowding was an administrative offense, not a criminal offense in Alabama.

20. The court denied the motion and required Dortch to defend against a criminal charge of overcrowding.

21. Later when Dortch came to court prepared to defend against the charge of overcrowding, the City informed the court that there were some technicalities in the complaint and asked that it be "nol prossed. Though Dortch objected. the court granted that request.

22. Later, for the same alleged criminal conduct for which Dortch had been charged in the initial complaint, Mr. Cremeens and the City changed the charge to "reckless endangerment."

23. Again, Dortch was ordered to attend court on the same alleged criminal conduct, Dortch filed for dismissal; again, the municipal court denied the motion.

24. However, again, when Mr. Cremeens and the City moved for dismissal on the basis of a technicality, the court granted their motion so that the complaint could be amended to include facts that the defendants considered to be adequate to state a criminal offense against Dortch.

25. Subsequently, Cremeens filed another criminal complaint in which he alleged new allegations or fabricated facts in an attempt to state a criminal charge of reckless endangerment based on the same conduct for which he had previously cited Dortch for overcrowding. With each complaint, Cremeens added facts or changed facts in an attempt to support the criminal charge he was making. All three complaints merely alleged overcrowding.

26. So, for the third time, for the same alleged conduct in each instance, Dortch was required to defend against a charge of reckless endangerment. He defended this charge in court but was eventually found guilty of reckless endangerment by the municipal court, fined $500.00 and court cost, and received a sentence of 75 days incarceration, which was suspended.

27. At the trial, defendant Cremeens was asked why did he file a charge of reckless endangerment against Dortch but had never brought such a charge against any other defendant for the same alleged conduct. Cremeens responded that he had received his orders from "higher ups" and that the reckless endangerment charge was instituted because no other defendant charged with overcrowding had ever challenged the City on the charge of overcrowding.

28.  Dortch appealed his conviction to the Circuit Court of Montgomery County, where the criminal proceeding terminated in Dortch's favor when the court dismissed the charge against Dortch on June 29, 2006.

29.  Defendant Cremeens and the City of Montgomery have treated Dortch differently than similarly situated white persons. They have acted toward Dortch in an arbitrary and capricious manner, and they have been selective in the application of the law. They specifically targeted African American nightclubs during the Thanksgiving Holiday weekend. Although many bars, grills, restaurants are overcrowded during the Auburn-Alabama "Iron Bowl" weekend, none of the establishments that cater predominately to "white" patrons have been closed for overcrowding; no white employee has been criminally cited for overcrowding at either of these restaurants.

30.  Prior to charging Dortch with a criminal offense of reckless endangerment for overcrowding, neither defendant Cremeens nor the City of Montgomery had ever instituted a charge of for reckless endangerment for overcrowding, even where there had been overcrowding.

31.  At the time Dortch was criminally charged with reckless endangerment for alleged overcrowding, the City of Montgomery had never prosecuted any white person on a charge of reckless endangerment for overcrowding, even where there had been overcrowding.

32.  Neither Cremeens nor the City of Montgomery has forced any white establishment to remain closed for overcrowding and to remain closed until a cited defendant had gone to trial on the charge of overcrowding, even where there has been overcrowding.

33. In forcing the Rose to close for seven days, without affording it due process, Cremeens and the City acted beyond the scope of their authority. Defendant Cremeens lacked arguable probable cause to file a criminal complaint against Dortch for overcrowding and reckless endangerment. The City of Montgomery lacked arguable probable cause to prosecute the charges.

34. To defend against this charge, Dortch was compelled to attend court approximately seven times.

35. There were no facts that would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the Dortch was guilty of a criminal offense for the alleged conduct for which he was accused of committing because no criminal offense occurred, and the alleged conduct which Dortch was criminally charged had not been made a criminal act by Alabama or the City..

36. Mr. Cremeens, acting on behalf of and with authority of the City of Montgomery, acted negligently or with misinterpretation of the law on behalf of the City of Montgomery. The City, through its Mayor and Fire Chief, adopted and ratified the actions of Mr. Cremeens.

37. As a result of the actions of Mr. Cremeens, acting on behalf of the City, and the City, Dortch's rights were violated; his freedom was restrained. He had to expend sums of money to secure legal representation. He missed time from work. He incurred travel expenses coming back to Montgomery from out of state, where he worked during the week, to defend the charge. He lost income; He was falsely accused. He had to defend against an illegal charge. A conviction remains on his record. The defendants' actions injured Dortch and caused him to suffer humiliation and mental anguish.

38. As a result of the action of Mr. Cremeens, acting on behalf of the City, and the City's illegal custom and policy of closing nightclubs for overcrowding, the Rose lost substantial revenue and lost customers during the Thanksgiving Holiday weekend . It had to expend sums of money to secure legal representation. The owner, Richard Thomas, suffered humiliation mental anguish.

## VI. Federal Claims

### COUNT I—ILLEGAL SEIZURE AND DETENTION

39. The plaintiffs repeat and re-allege paragraphs 1 through 38 as if expressly set forth here at length.

40. Defendant Cremeens acted under pretense and color of law and his official capacity, but such acts were beyond the scope of his jurisdiction and without authorization of law. He, individually, and/or in concert with others, acted willfully, knowingly, and with specific intent to deprive the Dortch of his right to freedom from illegal seizure of his person and of his rights to freedom from unlawful detention, which rights are secured to Dortch by the Fourth and Fourteenth Amendments to the Constitution of the United States.

41. ` Cremeens had no authority to bring a criminal complaint for overcrowding, and in brining such a complaint. The City, in refusing to dismiss the charges, prosecuted these illegal charges. By doing so it ratified and acquiesced in Cremeens' illegal conduct. He had no authority to close the Rose without affording it due process of law. The City, in requiring the Rose to remain closed without affording it a hearing, ratified and acquiesced in Lt. Cremeens' illegal conduct.

42. Defendant Cremeens acted maliciously and without probable cause, and

his action deprived the plaintiffs of their constitutional rights. There is a direct causal link between the municipal policy or custom and the constitutional deprivation suffered by the plaintiffs. In acting as he did, Cremeens was executing the City's policy on custom, and in so doing inflicted injury to the plaintiff.

43. The defendants' acts against Dortch amount to an unlawful seizure.

WHEREFORE, Dortch requests judgment against the defendants, and each of them for:

    a. compensatory damage against both defendants;

    b. punitive damages against defendant Cremeens;

    c. reasonable attorney fees; costs of suit; and

    d. such other further relief as the court deems just and proper.

## COUNT II—SELECTIVE AND UNEQUAL TREATMENT/DENIAL OF EQUAL PROTECTION OF THE LAW

44. The Plaintiffs re-allege and incorporate the allegations in paragraphs 1-43 as if fully set forth herein.

45. Cremeens City retaliated against and targeted Dortch because of Dortch's exercising his constitutional right in seeking redress of the overcrowding charge, abused the judicial process in instituting criminal charges for reckless endangerment when it was clearly established that the alleged conduct, on which Cremeens and the City premised the entire prosecution, was not a criminal act, had never been made a criminal act by a city ordinance, and had not been declared a criminal act by the Legislature.

46. The actions of Cremeens and the City amount to selective enforcement and violate Dortch's constitutional rights secured by the equal protection clause of the federal Constitution

WHEREFORE, Dortch requests judgment against the defendants, and each of them for:

    (a) compensatory damages;

    (b) punitive damages against defendant Cremeens;

    (c) reasonable attorney fees; costs of suit; and

    (d) such other further relief as the court deems just and proper.

**COUNT III—DENIAL OF DUE PROCESS OF LAW**

47. The plaintiffs re-allege and incorporate the allegations in paragraphs 1-45 as if fully set forth herein.

48. There is a direct causal link between the municipal policy or custom and the constitutional deprivation suffered by the plaintiffs. Cremeens was executing the City's policy on custom, and in so doing inflicted injury to the plaintiffs.

49. The actions of the defendants violate the plaintiffs' rights to due process.

WHEREFORE, the plaintiffs request judgment against the defendants and each of them for:

    (a) compensatory damages;

    (b) punitive damages against defendant Cremeens;

    (c) reasonable attorney fees; costs of suit; and

    (d) such other further relief as the court deems just and proper

## VII. Pendent State Claims

**COUNT IV—MALICIOUS PROSECUTION**

50. The plaintiffs re-allege and incorporate the allegations in paragraphs 1-45 as if fully set forth herein.

11

51. Cremeens instituted, with malice, a prior judicial proceeding: he lacked probable cause to do so, his action was malicious, and the proceeding terminated in favor of Dortch; Dortch suffered damages.

52. The City adopted and ratified Cremeens' actions. The defendants' acts amount to an abuse of process.

## COUNT IV—ABUSE OF PROCESS

53. The Plaintiffs re-allege and incorporate the allegations in paragraphs 1-45 as if fully set forth herein.

54. In instituting the criminal complaint against Dortch, Cremeens possessed an ulterior purpose; he wrongly used the judicial process to institute a criminal proceeding against Dortch, when he knew or should have known that purpose of a criminal proceeding was not intended to obtain a criminal conviction on persons who had not committed conduct that had not been deemed to be criminal by the state legislature or the City; hence, the conduct was not criminal in nature.

55. At the time Cremeens filed criminal charges against Dortch and the City convicted Dortch for overcrowding, it was clearly established that overcrowding was not a criminal offense; yet Cremeens and the City continued with a criminal prosecution.

56. The acts of the defendants amount to an abuse of process.

WHEREFORE, Dortch requests from the defendants the following:

    (a) compensatory damages against each defendant on each claim;

    (b) punitive damages against defendant Cremeens on each claim;

    (c) costs;

    (d) expungement of the criminal arrest and conviction and/ or sealment

of the criminal arrest and conviction; and

      (e)   the plaintiff requests other and further relief as the Court deems just and proper.

**THE PLAINTIFFS REQUEST A STUCK JURY ON ALL TRIABLE ISSUES.**

                                  Respectfully submitted,

                                  FRED F. BELL  (BEL014)

ADDRESS OF COUNSEL
1015 South McDonough Street
Montgomery, Alabama 36104
(334) 265-8176
(334) 265-8177 FAX
ffbell@netzero.com

13

```
DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602001253
Cashier ID: brobinso
Transaction Date: 11/26/2007
Payer Name: FRED BELL
-----------------------------------------
CIVIL FILING FEE
 For: FRED BELL
 Case/Party: D-ALM-2-07-CV-001034-001
 Amount:         $350.00
-----------------------------------------
CASH
 Amt Tendered:  $350.00
-----------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00
```