**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **KENDRICK L. DORTCH, and** | ) | |
| **RICHARD THOMAS, as owner of** | ) | |
| **the ROSE SUPPER CLUB,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.  2:07cv1034-MEF** |
| **vs.** | ) | |
| | ) | |
| **THE CITY OF MONTGOMERY, and** | ) | |
| **LT. G.C. CREMEENS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **TIMOTHY CRENSHAW, and** | ) | |
| **KENT CRENSHAW, as owner of** | ) | |
| **the DIAMONDS CLUB,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.  2:07cv1035-MEF** |
| **vs.** | ) | |
| | ) | |
| **THE CITY OF MONTGOMERY, and** | ) | |
| **LT. G.C. CREMEENS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT G.C. CREMEENS'
## MOTION FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P. 56(c), Defendant Lt. G.C. Cremeens moves the Court for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The Defendant submits that summary judgment is appropriate because the evidence submitted herewith shows that there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Id. Based on the propositions submitted herewith, the

Plaintiffs cannot prove the elements necessary to support a case upon which they have the ultimate burden of proof. <u>Celotex Corp. v. Catrett</u>, 477 U.S. <u>supra</u> at 322-324 (1986).

In support of this motion Defendant Lt. G.C. Cremeens submits the following:

1. the narrative statement of facts in support of summary judgment;

2. the memorandum of law in support of Defendant Cremeens' motion for summary judgment;

3. Exhibit A - an Affidavit of G.C. Cremeens dated August 4, 2008;

4. Exhibit 1 - the Affidavit of G.C. Cremeens in support of the arrest of Plaintiff Timothy Crenshaw for reckless endangerment;

5. Exhibit 2 - the Affidavit of G.C. Cremeens in support of the arrest of Plaintiff Kendrick Dortch for reckless endangerment;

6. Exhibit 3 - 04/11/06 municipal court case action summary reflecting that Plaintiff Crenshaw was found guilty of the charge of reckless endangerment;

7. Exhibit 4 - 04/11/06 municipal court case action summary reflecting that Plaintiff Dortch was found guilty of the charge of reckless endangerment;

8. Exhibit 5 - municipal court case action summary showing that on 07/07/06 the charge against Plaintiff Crenshaw was dismissed on appeal to circuit court;

9. Exhibit 6 - municipal court case action summary showing that on 07/07/06 the charge against Plaintiff Dortch was dismissed on appeal to circuit court;

10. Exhibit 7 - non-traffic related citations and memorandum accompanying citations concerning the charges of overcrowding brought by the City of Montgomery against Rose Supper Club on February 13, 2005 and February 14, 2005;

2

11. Exhibit 8 - February 16, 2005 letter from Mayor Bright to Plaintiff Richie Thomas regarding overcrowding at Rose Supper Club on February 13, 2005 and February 14, 2005;

12. Exhibit 9 - documents regarding overcrowding at Diamonds Club on April 8, 2005;

13. Exhibit 10 - February 19, 2004 memo from Defendant Lt. G.C. Cremeens to his superior re: overcrowding at Rose Supper Club;

14. Exhibit 11 - February 13, 2007 memo from fire marshal J.R. Amsler re: adoption of National Fire Protection Administration (NFPA) Codes and Standards;

15. Exhibit 12 - documents reflecting history of overcrowding at Rose Supper Club;

16. Exhibit 13 - May 4, 2008 Plaintiff Kendrick Dortch and Plaintiff Richie Thomas response to Defendant Cremeens' requests for admission and Defendant's requests for admissions;

17. Exhibit 14 - May 10, 2008 Plaintiff Richie Thomas and Plaintiff Kendrick Dortch response to Defendant Cremeens' requests for admissions and interrogatories and Defendant's requests for admissions and interrogatories;

18. Exhibit 15 - May 10, 2008 Plaintiff Kent Crenshaw and Plaintiff Timothy Crenshaw response to Defendant Cremeens' requests for admissions and interrogatories and Defendant's requests for admissions and interrogatories.

Submitted this the 14 day of August, 2008

Respectfully submitted,

**WESLEY ROMINE (ROM002)**

3

**JOEL H. PEARSON (PEA019)**
**ATTORNEYS FOR DEFENDANT G.C.**
**CREMEENS**


**OF COUNSEL:**

**MORROW, ROMINE & PEARSON, P.C.**
**P.O. Box 4804**
**122 South Hull Street**
**Montgomery, AL 36103-4804**
**Telephone:    (334) 262-7707**
**Facsimile:    (334) 262-7742**
**Email:        wromine@mrplaw.com**

## CERTIFICATE OF SERVICE

I hereby certify that on __August 14, 2008__, I electronically filed the foregoing with the Court using the CM/ECF system, and I hereby certify that I am serving the foregoing documents to the following:

Hon. Fred F. Bell
1015 south McDonough Street
Montgomery, AL 36104

Hon. Kimberly O. Fehl
City of Montgomery Legal Division
P.O. Box 1111
Montgomery, AL 36101-1111

Respectfully submitted,

WESLEY ROMINE (ROM002)
One of the Attorneys for Defendant
G.C. Cremeens
Morrow, Romine & Pearson, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:    (334) 262-7707
Facsimile:    (334) 262-7742
Email: wromine@mrplaw.com

4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KENDRICK L. DORTCH, and<br>RICHARD THOMAS, as owner of<br>the ROSE SUPPER CLUB,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE CITY OF MONTGOMERY, and<br>LT. G.C. CREMEENS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO. **2:07cv1034-MEF**<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| TIMOTHY CRENSHAW, and<br>KENT CRENSHAW, as owner of<br>the DIAMONDS CLUB,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE CITY OF MONTGOMERY, and<br>LT. G.C. CREMEENS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO. **2:07cv1035-MEF**<br>)<br>)<br>)<br>)<br>)<br>) |

## NARRATIVE STATEMENT OF FACTS

The Plaintiffs initiated their lawsuit against the City of Montgomery and Lt. G.C. Cremeens, a fire investigator with the City of Montgomery, on November 21, 2007 and November 26, 2007, respectively. (Doc. 1 Pl. Compl). Lt. Cremeens was alleged to be responsible for the arrest of Kendrick Dortch, the manager of the Rose Supper Club on November 25, 2005. (Doc. 1 Pl. Compl). Cremeens was also alleged to be responsible for the arrest of Plaintiff Timothy Crenshaw, manager of the Diamonds Club on November 24, 2005. Id. Plaintiff Richard Thomas is the owner of the

Rose Supper Club which was formerly known as Top Flight Club. (Ex. 12). Plaintiff Kent Crenshaw is the owner of Diamonds Club. (Doc. 1 Pl. Compl ¶ 2 ).

Lt. Cremeens was a fire investigator for the City of Montgomery Fire Department for six years. (Cremeens Aff. ¶ 1). He served in the Division of Investigations of the City of Montgomery Fire Department. (Cremeens Aff. ¶ 1). As a fire investigator, Lt. Cremeens had arrest powers and the power to secure warrants for the arrests of individuals violating fire codes. (Cremeens Aff. ¶ 1).

In 2005 the City of Montgomery was enforcing the 2003 version of the National Fire Protection Association Code (NFPA)  (Cremeens Aff ¶ 2; Ex. 11). That code provides a formula that specifies the capacity of nightclubs, restaurants and other facilities open to the public. (Cremeens Aff. ¶ 2). The designated capacity for patrons is set by the Codes and Standards Division of the fire department. (Cremeens Aff. ¶ 2). It is approved by the City Council. (Ex. 12) The Division of Investigation for the fire department for which Cremeens worked had nothing to do with the setting of limits on how many patrons can be in an establishment at a given time. (Cremeens Aff. ¶ 2). The Division of Investigation is charged with assisting the City fire marshal's office in enforcing limitations on the capacity of an establishment. (Cremeens Aff. ¶ 2).

A determination of overcrowding in a public facility may be made by two means. First, routine inspections are made of various facilities including nightclubs to ensure that proper capacities are maintained. (Cremeens Aff. ¶¶ 3, 5). Administrative searches are conducted at such times. (Cremeens Aff. ¶ 4). These searches entail a walk-through inspection of the establishment being inspected. (Cremeens Aff. ¶ 4). The other means of determining over capacity is when the Division of Investigation or police receive a report from a patron or citizen that an establishment is overcrowded. (Ex. 1 and 2).

2

When a facility is overcrowded it is closed for the evening. (Cremeens Aff. ¶ 6). In 2005 the only punishment for being over capacity was issuance of a uniform non-traffic offense for overcrowding which resulted in a fine. (Cremeens Aff. ¶ 6 ). As Lt. Cremeens has stated, that situation did little to deter a nightclub from being overcrowded the next night. Id. Such was particularly true in that a club that was overcrowded generally had already charged its patrons a cover charge before it was closed down because it was over capacity. Id.

The following procedures are followed when an establishment is suspected of being overcrowded. Citations of overcrowding or over capacity are only issued upon probable cause to believe overcrowding exists. (Cremeens Aff. ¶ 7). The general policy is when overcrowding is suspected the investigator will conduct a walk-through inspection or administrative search. Id. At that time if the club appears overcrowded the patrons are asked to exit the front doors. Id. All other doors are secured by assisting police officers. Id. The patrons then proceed through the front entrance where the investigator counts them with a mechanical counter. Id. To determine if the establishment is overcrowded the investigator then compares the number of people on the count with the number posted as capacity for each establishment by the fire marshal. Id. The investigator then proceeds to the City of Montgomery magistrate's office to fill out appropriate documentation which procedure is according to the guidelines of the Montgomery Fire Department as it pertains to overcrowding situations. Id. No arrests are made at the scene. (Cremeens Aff. ¶ 7) The charges arrive later from issuance of a warrant by a properly authorized and trained City of Montgomery magistrate. Id.

The decision to secure a warrant or to cause the arrest of individuals operating at overcrowded capacity is a discretionary function of the fire investigators such as Lt. Cremeens.

3

(Cremeens Aff. ¶ 8). That it is a discretionary function is acknowledged by Plaintiffs Dortch and Thomas. (Ex. 13 Response to Request for Admission No. 9).

In regard to the two clubs at issue in this case, both the Rose Supper Club and the Diamonds Club, had been overcrowded earlier in 2005. (Cremeens Aff. ¶¶ 9-11; Ex. 7 and 9). In fact, the Rose Supper Club (and its predecessor Top Flight Club which was also owned by Plaintiff Thomas) have a long history of repeated overcrowding. (Ex. 12) As early as February, 2004 Lt. Cremeens notified his superiors that overcrowding at the Rose Supper Club was a serious risk to patrons inside the club in light of recent nightclub fatalities involving fire and crowd panic. (Ex. 10; Cremeens Aff. ¶ 9).

On February 13, 2005 and February 14, 2005 Cremeens received complaints that the Rose Supper Club was overcrowded. (Cremeens Aff. ¶ 10; Ex. 7). Upon investigation he determined the Rose Supper Club was seriously in excess of its capacity. Id. The problem was such that on February 16, 2005 City of Montgomery Mayor Bobby Bright wrote a letter to the Rose Supper Club about the overcrowding on those two nights. (Ex. 8). Mayor Bright threatened to close the club and withdraw its business license if it continued to be over capacity. (Ex. 8).

Similarly, on April 8, 2005 Lt. Cremeens determined that the Diamonds Club was over capacity by some 117 patrons. (Cremeens Aff. ¶ 11; Ex. 9).

In both of the incidents the owners/managers of the clubs appeared in municipal court and plead guilty to violating the City's fire code. (Ex. 7 and 9). They were fined. (Cremeens Aff. ¶ 12).

In regard to the events that lead to this case, late in the evening on November 24, 2005 Lt. Cremeens received a complaint from an individual who identified herself as Tacorney Arrington. (Cremeens Aff. ¶13). The complaint was that the Diamonds Club was overcrowded. (Cremeens Aff. ¶ 13).

4

Lt. Cremeens responded to that as well as another call that the Diamonds was overcrowded shortly before midnight on November 24, 2005. (Cremeens Aff. ¶ 13). Two City of Montgomery police units were present as well. Id. After an initial walk through of the Diamonds Club it was the opinion of Cremeens that the club was seriously over capacity. Id. Cremeens instructed the manager of the Diamonds Club, Plaintiff Timothy Crenshaw, to turn the lights on, turn the music off and instruct all patrons to exit the front door. (Cremeens Aff. ¶ 14). The other exits were secured by assisting police officers. Id. Using the mechanical counter Cremeens determined that the total number of people that exited was 463. Id. It is admitted by the Diamonds Club that its capacity on November 24, 2005 was 299. (Ex. 15 Response to Request for Admission No. 3). Thus, the Diamonds Club had 164 more patrons than that allowed by the fire marshal's office for the facility. (Cremeens Aff. ¶ 14). In the opinion of Cremeens, the management of the Diamonds Club had disregarded the situation so as to increase the risk of death or serious bodily harm to patrons as well as create a fire hazard. (Cremeens Aff. ¶14 ). Management at the Diamonds Club does not contend in this suit that overcrowding does not create a significant risk to health and safety or that overcrowding creates a fire hazard. (Ex. 15 Response to Interrogatories 2 and 4).

At approximately 12:30 a.m. on November 25, 2005 Cremeens received word of a 911 call complaining that the Rose Supper Club was over capacity. (Cremeens Aff. ¶ 15). After conducting an inspection at another club, Cremeens then proceeded to the Rose Supper Club at approximately 1:00 a.m. on November 25, 2005. (Cremeens Aff. ¶ 16) At that time he confirmed a 911 call advising that people from the Rose Supper Club had parked their cars everywhere in the neighborhood, even in peoples' driveways. (Cremeens Aff. ¶ 16). A second complaint concerning overcrowding at the Rose Supper Club was received from an individual named Keysha Martin.

5

(Cremeens Aff. ¶ 16).

When Cremeens arrived at the Rose Supper Club he noticed a number of cars parked so as to block the roadway. (Cremeens Aff. ¶ 17). Shortly after entering the club he observed an individual with a mechanical counter keeping a digital number of occupants on it. (Cremeens Aff. at ¶ 17). He was then greeted by the manager of the Rose Supper Club on that evening. Id. The manager identified himself as Plaintiff Kendrick Dortch. Id. Cremeens was accompanied by Mr. Dortch as the two moved through the club twice and found it was obviously over capacity. Id. Cremeens instructed management to turn the music off and turn the lights on. Id. He then had management instruct the patrons to exit through the front door. Id. Cremeens used a mechanical counter to count the patrons as they left. Id. At that time the maximum capacity for the Rose Supper Club set by the fire marshal's office was 300. (Ex. 13 Response to Request for Admissions No. 3). Cremeens counted 508 patrons which was 208 over the maximum capacity of 300 allowed for the club. (Cremeens Aff. ¶ 17). In the opinion of Lt. Cremeens the overcrowding created a significant risk of health and safety of patrons and was a fire hazard. Id. It was apparent to Cremeens that Kendrick Dortch had allowed the overcrowding to occur. (Cremeens Aff. ¶ 17). The management of the Rose Supper Club does not contend that overcrowding does not create a significant risk of health or safety or does not create a fire hazard. (Ex. 14 Response to Interrogatories No. 2 and 4).

The management of the Diamonds Club and Timothy Crenshaw cannot refute that the Diamonds Club was overcrowded on November 24, 2005. (Ex. 15 Response to Interrogatories No. 10 and 11). Nor can the management of the Rose Supper Club refute that that establishment was overcrowded on November 25, 2005. (Ex. 14 Response to Interrogatories No. 10 and 11). Moreover, Kent Crenshaw admits he was the individual responsible for the capacity at the Diamonds

6

Club on the evening made the basis of this suit. (Ex. 15 Response to Request for Admissions No. 9).

After his inspections Lt. Cremeens followed the routine procedure he had followed in the past. (Cremeens Aff. ¶18). He went to the City of Montgomery magistrate's office and filled out appropriate documentation. Id. In doing so he was following the guidelines of the Montgomery Fire Department as it pertains to overcrowding of clubs and the closures thereof. (Cremeens Aff. ¶¶ 18, 19). Cremeens did not arrest or handcuff any individual at the Diamonds Club or the Rose Supper Club. (Cremeens Aff. ¶18).

The initial charge authorized by the magistrate was overcrowding. (Cremeens Aff. ¶19). That charge was a non-traffic offense punishable by a fine. Id. Shortly after instituting the charge of overcrowding, Cremeens was advised by City of Montgomery Municipal Court Administrator and Chief Magistrate Patrick Murphy that the NFPA code being used by the City while having been approved to designate the maximum capacities of public facilities, it had not been approved by the City council to include a fine or punishment. (Cremeens Aff. ¶19). Because it was Cremeens view that the actions of Plaintiffs Kendrick Dortch and Timothy Crenshaw had created a substantial risk of bodily harm to the patrons of the establishments due to overcrowding, he drafted an affidavit formulating the charge of reckless endangerment.    (Cremeens Aff. ¶19; Ex. 1 and 2). It was Cremeens view that a criminal defendant can be convicted of a crime even where no injury has been caused. Id. In the dangerous situations that Cremeens found on the night in question there was a necessity for preventive measures. Id. In Cremeens mind the individual Plaintiffs disregarded the increased risk of death and serious bodily harm to the patrons of their respective establishments. Id. It was the objective belief of Cremeens that the actions violated ALA. CODE § 13A-6-24 (1975)

7

which states that "a person commits a crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." Id.

The magistrate authorized the charge of reckless endangerment. (Cremeens Aff. ¶20). Lawful warrants were issued by the magistrate for the arrests of Timothy Crenshaw and Kendrick Dortch. Id.

Lt. Cremeens has expressed that at all time he based his decision to secure the warrant for reckless endangerment based on objective reasonableness. (Cremeens Aff. ¶21). Cremeens has stated he had no inkling or fair warning that to charge the Plaintiffs or the establishments with the crime of reckless endangerment violated any constitutional rights. Id. Objectively, it was the opinion of Cremeens that Timothy Crenshaw and Dortch had violated clearly established law. Id. He has expressed that his actions were not knowing or malicious. (Cremeens Aff. ¶21).

On April 4, 2006 Plaintiffs Timothy Crenshaw and Kendrick Dortch were tried in the City of Montgomery Municipal Court. (Cremeens Aff. ¶22). Testimony was presented on both sides. Id. Both individuals were found guilty of reckless endangerment. (Ex. 3 and 4).

Nonetheless, both individuals appealed to circuit court. (Cremeens Aff. ¶23). The respective circuit judges who heard their cases dismissed the charge of reckless endangerment against them. (Ex. 5 and 6). This lawsuit followed. (Cremeens Aff. ¶23)

Although there are allegations of selective prosecution that violated the Plaintiffs' rights to equal protection, both Timothy Crenshaw and Kendrick Dortch admit they cannot refute the City's denial that they were subject to selective enforcement or arrest. (Ex. 14 and 15 Responses to Interrogatory No. 7).

Dated this the 14 day of August, 2008.

8

Respectfully submitted,

*Wesley Romine*

**WESLEY ROMINE (ROM002)**
**ONE OF THE ATTORNEYS FOR**
**DEFENDANT G.C. CREMEENS**

**OF COUNSEL:**

**MORROW, ROMINE & PEARSON, P.C.**
**P.O. Box 4804**
**122 South Hull Street**
**Montgomery, AL 36103-4804**
**Telephone:    (334) 262-7707**
**Facsimile:    (334) 262-7742**
**Email:        wromine@mrplaw.com**

## CERTIFICATE OF SERVICE

I hereby certify that on _August 14, 2008_, I electronically filed the foregoing with the Court using the CM/ECF system, and I hereby certify that I am serving the foregoing documents to the following:

Hon. Fred F. Bell
1015 south McDonough Street
Montgomery, AL 36104

Hon. Kimberly O. Fehl
City of Montgomery Legal Division
P.O. Box 1111
Montgomery, AL 36101-1111

Respectfully submitted,

*Wesley Romine*

WESLEY ROMINE (ROM002)
One of the Attorneys for Defendant
G.C. Cremeens
Morrow, Romine & Pearson, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:    (334) 262-7707
Facsimile:    (334) 262-7742
Email: wromine@mrplaw.com

9

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KENDRICK L. DORTCH, and<br>RICHARD THOMAS, as owner of<br>the ROSE SUPPER CLUB,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE CITY OF MONTGOMERY, and<br>LT. G.C. CREMEENS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO. 2:07cv1034-MEF

| | |
|---|---|
| TIMOTHY CRENSHAW, and<br>KENT CRENSHAW, as owner of<br>the DIAMONDS CLUB,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE CITY OF MONTGOMERY, and<br>LT. G.C. CREMEENS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO. 2:07cv1035-MEF

## AFFIDAVIT OF G.C. CREMEENS

STATE OF ALABAMA    )

COUNTY OF MONTGOMERY  )

    BEFORE ME, Donna DeShields , a Notary Public in and for said County and State,

personally appeared G.C. Cremeens, who is known to me, and who, after first being duly sworn,

does state as follows:



1.    My name is G.C. Cremeens. I am retired as a fire investigator with the City of Montgomery. I was a fireman with the City of Montgomery for more than fifteen years. Then for the next six years I was a fire investigator. I served with the Division of Investigation of the City of Montgomery Fire Department. In my capacity as an fire investigator I had arrest powers. I had inspection powers regarding the person capacity of an establishment. I had authority to secure an arrest warrant based on my inspections. I have been through Montgomery Police academy training and as a consequence have same authority as a police officer. The Alabama Peace Officers Standards Training Commission has authorized me to (as well as the other fire investigators) to make arrests and swear out warrants the same as do other law enforcement officers.

2.    In 2005 the City of Montgomery was enforcing the 2003 version of the National Fire Protection Association Code (NFPA). That code provides a formula that specifies the capacity of night clubs, restaurants and other facilities open to the public. The designated capacity for patrons is set by the Codes and Standards Division of the fire department. It is then approved by the Montgomery City council. The Division of Investigation has nothing to do with setting the limits on how many patrons can be in an establishment at a given time. The Division of Investigation is charged with assisting the City Fire Marshal's office in enforcing the limitations on the capacity of an establishment.

3.    In order to enforce the capacity requirements periodic inspections are conducted of various public facilities to determine whether they are overcrowded. There is no policy existing in the City of Montgomery to pre-determine a charge of overcrowding. That determination is based on whether a facility is overcrowded when a routine inspection in conducted.

4    During the inspection, an administrative search is conducted. This search is done

2

with regularity and neutrality. It is a fire code inspection to ensure proper capacities are maintained. It entails a walk-through of the establishment being inspected.

5.    The inspections are periodic, generally every other weekend. That is a longstanding City of Montgomery policy. In order to enforce the designated capacities I would be given a list of public facilities to inspect. During my tenure the emphasis was generally on the 120 night clubs existing in Montgomery because those establishments have been determined over many years to be the most likely to be over capacity.

6.    When a facility is overcrowded it is closed for the evening. In 2005 the only punishment for being over capacity was issuance of a uniform non-traffic offense charge for overcrowding. Conviction of that charge resulted in a fine. Frequently, that situation did little to deter a nightclub from being overcrowded the next night. Such was particularly true in that a club that was overcrowded generally had already charged its patrons a cover charge before it was closed down because it was over capacity.

7.    The citations for overcrowding or over capacity were only issued upon probable cause to believe overcrowding existed. The general policy is when overcrowding is suspected the investigator will conduct a walk through inspection or administrative search. At that time if a club appears overcrowded the patrons are asked to exit the front doors. All other doors are secured by assisting police officers. The patrons then proceed through the front entrance where the investigator counts them with a mechanical counter. The investigator then compares the number of people on the count with the number posted as the capacity for each establishment by the Fire Marshal to determine if it is overcrowded. The investigator then proceeds to the City of Montgomery magistrate's office to fill out the appropriate documentation. That procedure is according to the

3

guidelines of the Montgomery Fire Department as it pertains to overcrowding situations. No arrests are made at the scene. The charges arise later from issuance of a warrant by a properly authorized and trained City of Montgomery magistrate.

8    At all times the process of inspecting facilities for overcrowding and securing warrants for the arrests of individuals was a discretionary function. It was part of the performance of my duties and was within the scope of my authorities as a fire investigator.

9    It should be realized that the two clubs involved in the above lawsuits against City of Montgomery and me had previous citations for overcrowding before those at issue. Indeed, the Rose Supper Club (and its predecessor club Top Flight) have a long history of repeated overcrowding. As early as February, 2004 I notified my superiors that overcrowding at the Rose was a serious risk to patrons inside the club in light of then recent night club fatalities involving fire and crowd panic.

10    On consecutive nights in February, 2005 I received complaints that the Rose Supper Club was overcrowded. Upon investigation I found the Rose Supper Club to be seriously in excess of its capacity. The problem was such that on February 16, 2005 Mayor Bobby Bright wrote a letter to the Rose Supper Club about the overcrowding that occurred on February 13, 2005 and February 14, 2005. He threatened the club with withdrawing its business license if it continued to be over capacity.

11    On April 8, 2005 I found the Diamonds Club to be over capacity by some 117 patrons.

12    In both of these instances the owners/managers of the clubs appeared in municipal court and pled guilty to violating the City's fire code. They were fined.

4

13.    At almost 11:00 p.m. on November 24, 2005 I received a complaint on my administrative line stating that the Diamonds Club was overcrowded. I then received a second complaint call concerning overcrowding. The complainant identified herself as I acorney Arrington.

14.    I responded to the complaint calls at the Diamonds before midnight on November 24, 2005. Two City of Montgomery police units were present as well. After an initial walk-through of the Diamonds Club it was my opinion that the club was seriously over capacity. I instructed the manager who I learned was Plaintiff Timothy Crenshaw to turn the lights on, turn the music off and instruct all patrons to exit the front door. The other exits were secured by assisting police officers Using a mechanical counter I counted each patron as they exited. The total number of people who exited was 463. That number was 164 more than the maximum of 299 patrons allowed by the fire marshal's office for that facility. The Diamonds Club was approximately 54 percent over the maximum capacity allowed by the fire marshal's office. In my view, the management of the Diamonds Club had disregarded the situation so as to increase the risk of death or serious bodily harm to the patrons as well as created a fire hazard

15.    At approximately 12:30 a.m. on November 25, 2005 I received word of a 911 call complaining that the Rose Supper Club was over capacity. I contacted communications and stated that I was leaving the Diamonds Club which I had closed down due to it being 164 people over capacity.

16.    I then proceeded to inspect another club that appeared from the number of cars in the parking lot and roadside outside of it to be overcrowded. In the interim, at 1:00 a.m. on November 25, 2005, there was a 911 call advising that people from the Rose Supper Club had parked their cars everywhere in the neighborhood even in people's driveways. The call complained of a fire hazard.

5

I identified the complainant concerning overcrowding at the Rose Supper Club as Keysha Martin.

17.    When I arrived at the Rose Supper Club I noticed a number of cars parked blocking the roadway. Shortly after entering the club I observed an individual with a mechanical counter keeping a digital number of occupants on it. I was then greeted by a manager who was identified as Plaintiff Kendrick Dortch. I was accompanied by Mr. Dortch as the two of us moved through the club twice and found that it was obviously over capacity. I instructed management to turn the music off and the lights on. I then had management instruct patrons to exit through the front door. I used a mechanical counter to count the patrons as they left. I counted 508 patrons which is 208 over the maximum capacity of 300 allowed by the fire marshal's office for the Rose Supper Club. In my view the overcrowding created a significant risk to the health and safety of the patrons and was a fire hazard. It was apparent to me that the Plaintiff Kendrick Dortch had allowed the overcrowding to occur.

18    Following the procedure I had followed in the past, I went to the City of Montgomery magistrate's office on the same date that the closures took place. I filled out appropriate documentation and followed the guidelines of the Montgomery Fire Department as it pertains to club closures. I did not arrest or handcuff any individual at either the Diamonds Club or the Rose Supper Club.

19    The initial charge authorized by the magistrate was overcrowding. As stated earlier, that is a non-traffic offense punishable by a fine. Shortly after instituting the charge of overcrowding, I was advised by City of Montgomery municipal court administrator Patrick Murphy that the NFPA code being used by the City had not been approved by City counsel to include a fine or punishment for the offense. Because it was my view that the actions of Plaintiffs Dortch and

6

Crenshaw had created a substantial risk of serious bodily harm to the patrons due to overcrowding, I suggested a charge of reckless endangerment. It is my view that a criminal defendant can be guilty of that crime even where there was no injury caused. In the dangerous situations that I found on the night in question there is a necessity for preventative measures. In my mind, the management and the individual Plaintiffs disregarded the increased risk of death and serious bodily harm to the patrons of their respective establishments. It was my objective belief that their actions violated §13A-6-24 of the Alabama Code which states that "a person commits a crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."

20.    The magistrate authorized the charge of reckless endangerment. Lawful warrants were issued by the magistrate for the arrest of Crenshaw and Dortch.

21     At all times I based my decision on objective reasonableness   I certainly had no inkling or fair warning that to charge the Plaintiffs or their establishments with the crime of reckless endangerment violated any constitutional rights. Objectively, it was my opinion that Dortch and Timothy Crenshaw violated clearly established law   Certainly my actions were not knowing or malicious

22.    On April 4, 2006 the Plaintiffs Timothy Crenshaw and Kendrick Dortch were tried in the City of Montgomery Municipal Court. Testimony was presented on both sides. Both individuals were found guilty of reckless endangerment

23.    Nonetheless, both individuals appealed to circuit court. The respective circuit judges who heard their cases dismissed the charge of reckless endangerment against them. That action resulted in this lawsuit

24. I have read the above and foregoing affidavit consisting of eight pages and certify that the facts and opinions contained therein are true and correct based on my personal knowledge.

Further affiant saith not:

G.C. Cremeens

**STATE OF ALABAMA**    )
**COUNTY OF MONTGOMERY**  )

Sworn to and subscribed to before me this the 4th day of August, 2008

NOTARY PUBLIC
My Commission Expires: 9/13/11

8

DEFENDANT'S EXHIBIT 1

Unified Judicial System

Form C-64(a)(front) Rev 11/91

DEPOSITION

2005S. 343
Case Number

IN THE    MUNICIPAL    COURT OF    MONTGOMERY,    ALABAMA
(Circuit, District or Municipal)    (Name of Municipality or County)

☐ STATE OF ALABAMA    ☒ MUNICIPALITY OF   **MONTGOMERY**

Timothy Robert Crenshaw / Diamonds    , Defendant

## INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE ACCUSED

| Name of Accused (or Alias) | | | | | Telephone Number |
|---|---|---|---|---|---|
| Timothy Robert Crenshaw | | | | | |

| Social Security Number | Driver's License Number | Date of Birth | Age | Race | Sex |
|---|---|---|---|---|---|
| | | 03-28-64 | 41 | Blk | M |

| Height | Weight | Hair | Eyes | Complexion | | | |
|---|---|---|---|---|---|---|---|
| 6'06 | 230 | Blk | Brown | Dark | | | |

| Address of Accused | City | State | Zip |
|---|---|---|---|
| 5941 Dartsmouth Dr. | Montgomery | Al. | 36116 |

| Name of Employer | | | Employer's Telephone Number |
|---|---|---|---|
| Self   Diamonds | | | |

| Address of Employer | City | State | Zip |
|---|---|---|---|
| 5050 Norman Bridge Rd | Montgomery | Al. | |

## INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE OFFENSE

Offense   Reckless Endangerment

Date and Time of Offense   11-24-05    11:55 PM

Place of Offense   5050 Norman Bridge Rd

Items Marked or Property Damaged:

How Marked

Did Accused Possess or Use a Weapon?  ☐ Yes  ☒ No   Type

Damage Done or Injuries Received

Value of Property

Details of Offense   I responded to two complaint calls to Diamonds on 11-24-05. After doing an initial walk thru it was my opinion that the club was overcrowded. I instructed the management to turn the lights on, turn the music off and instruct all patrons to exit out of the front door. As I did the initial walk thru I noticed it was very crowded and difficult for me to walk from one side of the club to the other. Using a mechanical counter I counted each patron as they exited for a total of 463 which is 164 more than the maximum allowed by the Fire Marshall's office. The Diamonds Club was approximately 54 percent over their maximum capacity allowed by the Fire Marshall's office. In recent years we have had 100 people die in a Rhode Island club fire and 21 die in a Chicago night club after a stampede resulted from a fight. I feel that dark or dimly lit rooms, loud music, and patrons consuming alcohol; Coupled with the club being over capacity will almost certainly result in injury or death. It is my opinion the the owner/management is recklessly endangering the patrons in the club by allowing more than the maximum set by the Fire Marshall's office. The above mentioned injury or death could result from a panic of the patrons.

State of Alabama
Unified Judicial System
Form C-64(a)(front) Rev 11

**DEFENDANT'S EXHIBIT 2**

DEPOSITION

Warrant Number
2005 S 341
Case Number

IN THE    MUNICIPAL    COURT OF    MONTGOMERY,    ALABAMA
(Circuit, District or Municipal)    (Name of Municipality or County)

☐ STATE OF ALABAMA    ☒ MUNICIPALITY OF **MONTGOMERY**

Kendrick Lamon Dortch / Rose Supper Club , Defendant

## INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE ACCUSED

| Name of Accused (or Plus) | | | | Telephone Number |
|---|---|---|---|---|
| Kendrick Lamon Dortch | | | | |

| Social Security Number | Driver's License Number | Date of Birth | Age | Race | Sex |
|---|---|---|---|---|---|
| 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 | 05023 5174 | 01-11-74 | 31 | Blk | M |

| Height | Weight | Hair | Eyes | Complexion |
|---|---|---|---|---|
| 5'04" | 155 | Blk | Brn | |

| Address of Accused | City | State | Zip |
|---|---|---|---|
| 2778 Cumberland Blvd | Smyrna | Ga. | 30080 |

| Name of Employer | | Employer's Telephone Number |
|---|---|---|
| Rose Supper Club | | |

| Address of Employer | City | State | Zip |
|---|---|---|---|
| 454 High St. | Montgomery | Al | |

## INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE OFFENSE

Offense: Reckless Endangerment

Date and Time of Offense: 11-25-05    0210 AM

Place of Offense: The Rose Supper Club

Person Attacked or Property Damaged:

Blow Attacked

Did Accused Possess or Use a Weapon?  ☐ Yes  ☒ No  Type:

Damage Done or Injuries Received

Value of Property

Details of Offense: On 11-25-05 I responded to a complaint that the Rose Supper Club was overcrowded. After arriving at the club I did an initial walk thru and count of the occupants. As I walked thru the club I noticed that it was very crowded which made it difficult for me to move from one side of the building to the other. I walked thru the club twice and felt as though it was over capacity. I instructed the management to turn the music off and the lights on and instruct the patrons to leave out of the front door. I used a mechanical counter and counted each person as they exited out of the door. I counted a total of 508 patrons which is 158 over the maximum capacity of 350 set by the Fire Marshall's office. I feel that the combination of loud music, dark rooms and alcohol consumption by the patrons; coupled with the club being over capacity will almost certainly result in injury or death should there be a panic. In recent years we have had 100 people die in a Rhode Island night club fire and 21 die in a Chicago night club after a stampede resulting from a fight. It is my opinion that the Owner/management is recklessly endangering the patrons in the club by allowing more than the maximum set by the Fire Marshall's office. This club was approximately 45% over their capacity.

| State of / ~~~~ ~~~~ | ● **COURT RECORD** ● | Case Number |
|---|---|---|
| City of Montgomery | **CASE ACTION SUMMARY** | **2006CRS500066** |
| Form MMC-1010    Rev. 10/03 | | PAGE 1 OF 4 |

IN THE MUNICIPAL COURT OF _____ **MONTGOMERY** _____ , **ALABAMA**

(Name of Municipality)

**MUNICIPALITY OF** _____ **MONTGOMERY** _____ v. **TIMOTHY ROBERT CRENSHAW**

Defendant

## DEFENDANT IDENTIFICATION AND INFORMATION

| Social Security Number | Date of Birth | Home Address | | | |
|---|---|---|---|---|---|
| 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 | 03/28/1964 | 5941 PORTSMOUTH DR | | | |
| Race | Sex | City | | State | Zip Code |
| B | M | MONTGOMERY | | AL | 36116 |
| Height | Weight | Home Telephone Number | | | |
| | | | | | |
| Eye Color | Hair Color | Employer Name & Address | | | |
| | | | | | |
| Driver License State | Driver License Number | City | | State | Zip Code |
| | 4822608 | | | | |
| Other / Distinguishing Features: | | Employer Telephone Number | | | |

Offense / Charge: __**(06E(14))  RECKLESS ENDANGERMENT**__

Complainant - Victim / Arresting Officer:    G C CREMEENS

Bondsman / Surety: _____    Bond Amount:    0.00

| Date of Offense | Date Warrant Issued | Date Committed to Jail | Date Released on Bond | Arraignment Date | Trial Date |
|---|---|---|---|---|---|
| 11/24/2005 | | | | 02/16/2006 | 3-24-06 SH 9:00 |

**PROSECUTOR NAME:** _____    **DEFENSE COUNSEL NAME:** _____

ARRAIGNMENT: _____    ARRAIGNMENT: _____

TRIAL: _____    TRIAL: _____

PLEA OF DEFENDANT: ☐ GUILTY AS CHARGED  ☒ NOT GUILTY  ☐ GUILTY OF: **APPEALED**

**DATE:** April 25, 2006

## ADJUDICATION

☒ GUILTY AS CHARGED    ☐ NOT GUILTY    ☐ NOL-PROSSED    ☐ DISMISSED

☐ GUILTY OF: _____

I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN THE MONTGOMERY MUNICIPAL COURT.

| 4-11-06 | | Patrick Q. Murphy CB |
|---|---|---|
| DATE | JUDGE, CITY OF MONTGOMERY | PATRICK J. MURPHY CLERK OF THE MONTGOMERY MUNICIPAL COURT |

## ACTIONS, JUDGMENTS, CASE NOTES: April 27, 2006

SENTENCED TO    75    DAYS IN JAIL, SUSPEND    75    DAYS.

FINE: $  500    COURT COST: $  15.    SUBPOENA / ALIAS WARRANT FEES:  $  800

COST & FEES: $  699.00    PAYMENT DUE DATE: _____

**DEFENDANT'S EXHIBIT 3**

| State of Alabama<br>City of Montgomery<br>Form MMC-1010    Rev. 10/03 | **COURT RECORD**<br>**CASE ACTION SUMMARY** | Case Number<br>**2006CRS500065**<br>PAGE 1 OF 4 |
|---|---|---|

### IN THE MUNICIPAL COURT OF _____ MONTGOMERY _____ , ALABAMA
*(Name of Municipality)*

### MUNICIPALITY OF _____ MONTGOMERY _____ v. _____ KENDRICK LAMON DORICH _____
Defendant

## DEFENDANT IDENTIFICATION AND INFORMATION

| Social Security Number<br>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 | Date of Birth<br>01/11/1974 | Home Address<br>2778 CUMBERLAND BLVD #228 | | |
|---|---|---|---|---|
| Race<br>B | Sex<br>M | City<br>SMYRNA | State<br>GA | Zip Code<br>30080 |
| Height | Weight | Home Telephone Number | | |
| Eye Color | Hair Color | Employer Name & Address | | |
| Driver License State<br>GA | Driver License Number<br>056235174 | City | State | Zip Code |
| Other / Distinguishing Features: | | Employer Telephone Number | | |

---

Offense / Charge:  **(06E(14))  RECKLESS ENDANGERMENT**

Complainant - Victim / Arresting Officer:  **G C CREMEENS**

Bondsman / Surety: _____  Bond Amount:  0.00

| Date of Offense | Date Warrant Issued | Date Committed to Jail | Date Released on Bond | Arraignment Date | Trial Date |
|---|---|---|---|---|---|
| 11/25/2005 | | | | 02/16/2006 | 3-24-06 S M 9:00A |

---

### PROSECUTOR NAME: _____          DEFENSE COUNSEL NAME: _____

ARRAIGNMENT: _____          ARRAIGNMENT: _____

TRIAL: _____          TRIAL: _____ Atty Bell

PLEA OF DEFENDANT: ☐ GUILTY AS CHARGED  ☒ NOT GUILTY  ☐ GUILTY OF: _____

## ADJUDICATION

☒ GUILTY AS CHARGED   ☐ NOT GUILTY   ☐ NOL-PROSSED   ☐ DISMISSED

☐ GUILTY OF: _____

B 4-11-06
4-14-06
DATE _____   JUDGE, CITY OF MONTGOMERY _____

**DEFENDANT'S EXHIBIT 4**

### ACTIONS, JUDGMENTS, CASE NOTES

SENTENCED TO  **75**  DAYS IN JAIL, SUSPEND  **75** DAYS _____

FINE: $ **500**   COURT COST: $ **191**

TOTAL FINE, COST & FEES: $ **699.00**

SUBPOENA _____
WARRANT _____
PAYMENT _____
DUE DATE: 12-18-07  7-11-06

I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT FILE IN THE MONTGOMERY MUNICIPAL COURT
PATRICK J MURPHY
CLERK OF THE MONTGOMERY MUNICIPAL COURT

| State of Alabama<br>City of Montgomery<br>Form MMC-1010    Rev 10/03 | CASE ACTION SUMMARY (CONTINUATION)<br>SENTENCING ORDER | Case Number<br>**2006CRS500066**<br>PAGE 3 OF 4 |

Offense / Charge:    RECKLESS ENDANGERMENT
Defendant Name:    **TIMOTHY ROBERT CRENSHAW**

| DATE | JUDGE'S<br>INITIALS | ACTIONS, JUDGMENTS, CASE NOTES |
|------|--------------------|--------------------------------|
| | | The Defendant shall enroll, participate and complete the: |
| | | ☐ Anger Management Program        ☐ E V E N  PROGRAM |
| | | 1ST REVIEW DATE: |
| | | 2ND REVIEW DATE: |
| | | 3RD REVIEW DATE: |
| | | The Defendant shall enroll, participate and complete the Court Referral Program |
| | | 1ST REVIEW DATE: |
| | | 2ND REVIEW DATE: |
| | | 3RD REVIEW DATE: |
| | | Defendant is prohibited from entering the premises of |
| | | _____ for a period of _____ |
| | | The Defendant shall complete _____ hours of community service at |
| | | The Defendant shall participate in the Victim-Offender Conferencing Program |
| | | (Criminal Mediation), and report to court for review on: |
| 3-14-06 | | Reset to 4-4-06 9:00am SAP per Judge Hayes. |
| 7-7-06 | | CHARGE DISMISSED ON APPEAL. ORDER ATTACHED. PJM |

I HEREBY CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF THE ORIGINAL DOCUMENT ON
FILE IN THE MONTGOMERY MUNICIPAL COURT

_Patrick Murphy_
PATRICK J. MURPHY
CLERK OF THE
MONTGOMERY MUNICIPAL COURT
DATE 12-18-07

DEFENDANT'S
EXHIBIT
**5**

| State of Alabama<br>City of Montgomery<br>Form MMC-1010    Rev. 10/03 | **CASE ACTION SUMMARY (CONTINUATION)**<br>**SENTENCING ORDER** | Case Number<br>**2006CRS500065**<br>PAGE 3 OF 4 |
|---|---|---|

Offense / Charge: RECKLESS ENDANGERMENT
Defendant Name: **KENDRICK LAMON DORTCH**

| DATE | JUDGE'S INITIALS | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|---|

The Defendant shall enroll, participate and complete the:

☐ Anger Management Program      ☐ E V E N PROGRAM

1ST REVIEW DATE: _____
2ND REVIEW DATE: _____
3RD REVIEW DATE: _____

The Defendant shall enroll, participate and complete the Court Referral Program

1ST REVIEW DATE: _____
2ND REVIEW DATE: _____
3RD REVIEW DATE: _____

Defendant is prohibited from entering the premises of _____ for a period of _____

The Defendant shall complete _____ hours of community service at _____

The Defendant shall participate in the Victim-Offender Conferencing Program

(Criminal Mediation), and report to court for review on:

3-14-06    Reset to 4-4-06 @ 9:00am per Judge Hayes,

7-7-06    CHARGE DISMISSED ON APPEAL ORDER ATTACHED. PJM

I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN THE MONTGOMERY MUNICIPAL COURT

PATRICK J. MURPHY
CLERK OF THE
MONTGOMERY MUNICIPAL COURT
DATE 12-18-07

**DEFENDANT'S EXHIBIT 6**

P.D. (Club) 9 - Officers

DEFENDANT'S EXHIBIT 7

B 20580

| State of Alabama<br>Unified Judicial System<br><br>ARJA-20          Rev. 10/00 | UNIFORM NONTRAFFIC CITATION<br>AND COMPLAINT<br>(For Scheduled Nontraffic Violations or Misdemeanors) | Case Number<br><br>Rose Supper Club |
|---|---|---|

IN THE <u>Municipal</u> COURT OF <u>Montgomery</u>, ALABAMA

Law-Enforcement Agency/Organization or Department
<u>Montgomery Fire Dpt.</u>

The undersigned complainant being duly sworn, deposes and says that the person herein named committed the offense hereinafter set forth in that on or about:

| Month | Day | Year | At Approx | Time |
|---|---|---|---|---|
| 0 12 | 13 | 0 15 | 1 :30 | ☒ AM ☐ PM ☐ MT |

First <u>Andre</u>   Middle/Maiden <u>Dwight</u>   Last <u>Hathcock</u>

Street <u>2531 Elsmeade Dr.</u>

City <u>Montgomery</u>   State <u>Al.</u>   Zip <u>36116</u>

| Driver's License Number <br> 5565302 | State <br> AL | Expiration Date | | Birth Date | | |
|---|---|---|---|---|---|---|
| | | Month <br> 04 | Day <br> 16 | Year <br> 17 | Month <br> 12 | Day <br> 08 | Year <br> 70 |

| Height <br> 6'02" | Weight <br> 215 | Eyes <br> Bro | Hair <br> Blk | Social Security Number <br> 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 | Sex <br> M | Race <br> Blk |
|---|---|---|---|---|---|---|

Name of Employer <u>Richie Thomas</u>   399 2808-cell   Address of Employer <u>Unknown</u>

Did violate: ☒ Ordinance Number <u>29-2000</u> which incorporates or encompasses Section _____ Code of Alabama 1975 within the city limits or police jurisdiction of <u>Montgomery</u> _____ and/or ☐ Section _____ Code of Alabama 1975 or ☒ Rule/Regulation Number <u>NFPA 1 3.1.4.2</u> within <u>Montgomery</u> County at or near the following location (describe) _____ more particularly described in the DESCRIPTION OF OFFENSE section below

## DESCRIPTION OF OFFENSE

Offense or Short Description of Offense:
<u>Overcrowding: Permitting admittance of persons beyond the approved occupa[t]</u>

State Specific Facts Relating to Offense:
<u>During an inspection, as a result of a complaint call, the above listed establishment, which has a maximum capacity of 300 occupants. I observed and counted 599 occupants, which is 299 over the maximum allowed by law. The manager was told to close the club and was cited for the offense.</u>

| Sworn to and acknowledged before me this date | Month <br> 0 12 | Day <br> 13 | Year <br> 0 15 | Complainant's (Officer s) Signature <br> G.C. Nimmins Lt MFD |
|---|---|---|---|---|

Signature and Title of Judicial Officer _____

| Officer I D <br> 0953 | AL | Agency O.R.I <br> 0 0 3 1 5 0 0 |
|---|---|---|

## COURT APPEARANCE INFORMATION          ☒ Court Appearance Required

By signing this citation I am promising to appear in court on the date and at the time specified below. If a court appearance is not required, I may choose to plead guilty before a magistrate or by mail or in person paying the required fine and court costs prior to my scheduled court date, in which event I do not have to appear in court. If I do not appear in court on the scheduled date and if I do not plead guilty and pay the required fine and costs prior to that date, I promise to pay an amount prescribed by law

I also understand that failure to appear or to plead guilty and pay the fine and costs may result in a warrant being issued for my arrest on the present charge and I may also be charged with second-degree bail jumping

| Court Appearance Date (if applicable) | | | | | Court Address <br> 320 N. Ripley St.<br>Mont. Al 36104-2722 | Telephone Number |
|---|---|---|---|---|---|---|
| Month <br> 0 12 | Day <br> 21 | Year <br> 0 15 | Time <br> 8:30 | ☒ AM ☐ PM | | 241-2776 |

Defendant's Signature <u>A.H. Hath</u>   Telephone Number _____

NOTICE: FAILURE TO APPEAR IN COURT AND/OR FAILURE TO REMIT FINE AND COSTS WILL RESULT IN AN ARREST WARRANT BEING ISSUED

B 20581

| State of Alabama<br>Unified Judicial System<br><br>ARJA-20      Rev 10/00 | UNIFORM NONTRAFFIC CITATION<br>AND COMPLAINT<br>(For Scheduled Nontraffic Violations or Misdemeanors) | Case Number<br>Rose Supper Club<br>954 Highland Ave |

IN THE **Municipal** COURT OF **Montgomery** , ALABAMA

Law-Enforcement Agency/Organization or Department
**Montgomery Fire Department**

The undersigned complainant being duly sworn, deposes and says that the person herein named committed the offense hereinafter set forth in that on or about:

| Month | Day | Year | At Approx | Time | ☐ AM ☐ PM ☑ MT |
|---|---|---|---|---|---|
| 02 | 14 | 05 | 0010 | | |

| First | Middle/Maiden | Last |
|---|---|---|
| Richie | David | Thomas |

Street: **6112 Dunwoody Ct.**

City: **Montgomery**    State: **Al**    Zip: **36117**

| Driver's License Number | State | Expiration Date | | | Birth Date | | |
|---|---|---|---|---|---|---|---|
| 5477479 | Al | Month 11 | Day 10 | Year 018 | Month 01 | Day 07 | Year 10 |

| Height | Weight | Eyes | Hair | Social Security Number | Sex | Race |
|---|---|---|---|---|---|---|
| 6 | 205 | BRO | BLK | 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 | M | B |

Name of Employer: **Self employed - Club owner**

Address of Employer: **954 Highland Ave**

Did violate: ☑ Ordinance Number **29-2000** which incorporates or encompasses Section _____, Code of Alabama 1975 within the city limits or police jurisdiction of **Montgomery** , and/or ☐ Section _____ Code of Alabama 1975 or ☑ Rule/Regulation Number **NFPA # 3-1.4.2** within **Montgomery** County at or near the following location (describe) _____ more particularly described in the DESCRIPTION OF OFFENSE section below

### DESCRIPTION OF OFFENSE

Offense or Short Description of Offense:
**Overcrowding: Permitting of Admittance of persons beyond the approved occupant load.**

State Specific Facts Relating to Offense:
**During an inspection of the above-listed establishment, which has a maximum capacity of 300 occupants, I observed and counted 446 occupants, which is 146 over the maximum authorized by law. The owner was directed to close club and was cited for above listed offense. Business was cited 2/13/05 for overcrowd.**

| Sworn to and acknowledged before me this date | Month | Day | Year | Complainant's (Officer's) Signature |
|---|---|---|---|---|
| | 02 | 14 | 05 | A. W. Campbell MFD |

Signature and Title of Judicial Officer

| Officer I D | Agency O.R.I. |
|---|---|
| 954 | AL 0 0 3 1 5 0 0 |

### COURT APPEARANCE INFORMATION    ☑ Court Appearance Required

By signing this citation, I am promising to appear in court on the date and at the time specified below. If a court appearance is not required, I may choose to plead guilty before a magistrate or by mail or in person paying the required fine and court costs prior to my scheduled court date, in which event I do not have to appear in court. If I do not appear in court on the scheduled date and if I do not plead guilty and pay the required fine and costs prior to that date I promise to pay an amount prescribed by law

I also understand that failure to appear or to plead guilty and pay the fine and costs may result in a warrant being issued for my arrest on the present charge and I may also be charged with second-degree bail jumping

| Court Appearance Date (if applicable) | | | | | Court Address | Telephone Number |
|---|---|---|---|---|---|---|
| Month | Day | Year | Time | ☑ AM ☐ PM | 320 N. Ripley St, | 241-2776 |
| 01 | 16 | 05 | 8:00 | | Montgomery, Al. | |

Defendant's Signature
**Richie Thomas**

Telephone Number
**399-2808**

NOTICE: FAILURE TO APPEAR IN COURT AND/OR FAILURE TO REMIT FINE AND COSTS WILL RESULT IN AN ARREST WARRANT BEING ISSUED

To:       W.D. Davis, Assistant Chief

From:     G.C. Cremeens, Fire Investigator Lieutenant *GCC*

Date:     February 15, 2005

Re:       Over Crowding At The Rose Supper Club

Sir;

On February 13, 2005 I received a call from the Alarm Room at
approximately 1:30 am concerning possible over crowding at The Rose
Supper Club. I was notified that Chanesse Hudson had called and
complained that the club was over crowded. Ms. Hudson left her cell phone
number {205-643-2602} which I called. I spoke with Ms. Hudson and she
confirmed that she did indeed call and make the complaint. While on the
phone with Ms. Hudson I spoke with her friend, Angela Lawson. Ms.
Lawson stated that she was told by one of the individuals working the door
that the club was full, but, if they would pay an extra 40.00 dollars they
could get in.

I arrived at the club and did a cursory investigation and found that the club
was most probably well over their legal occupancy load. I had two Patrol
Units of the Montgomery Police Department watch the exits and instruct
individuals to exit only through the front door. I instructed the manager to
turn the lights on and tell the patrons to exit through the front door. As the
individuals exited I used a mechanical counting device to keep an accurate
total of the occupants. After all of the patrons had exited, I entered the club
and counted the employees. I counted a total of 599 individuals which was
299 over the legal occupancy limit of 300. This limit is set by the
Montgomery Fire Marshall's office. Once the total occupancy was
calculated I issued a citation to the club naming Andre D. Hathcock as the
responsible party.

State of Alabama
City of Montgomery

Form MMC-1010     Rev. 10/03

# COURT RECORD
## CASE ACTION SUMMARY

Case Number

**2005CRS500059**

PAGE 1 OF 4

IN THE MUNICIPAL COURT OF _____ **MONTGOMERY** _____, **ALABAMA**
*(Name of Municipality)*

MUNICIPALITY OF _____ **MONTGOMERY** _____ v. _____ **ANDRE DWIGHT HATHCOCK**
Defendant

## DEFENDANT IDENTIFICATION AND INFORMATION

| Social Security Number | Date of Birth | Home Address | | |
|---|---|---|---|---|
| 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 | 12/08/1970 | 2531 ELSMEADE DR | | |
| Race | Sex | City | State | Zip Code |
| B | M | MONTGOMERY | AL | 36116 |
| Height | Weight | Home Telephone Number | | |
| 6'2" | 215 | | | |
| Eye Color | Hair Color | Employer Name & Address | | |
| BRO | BLK | ROSE SUPPER CLUB, 954 HIGHLAND AVE | | |
| Driver License State | Driver License Number | City | State | Zip Code |
| AL | 5565302 | MONTGOMERY | AL | 6104 |
| Other / Distinguishing Features: | | Employer Telephone Number | | |

Offense / Charge: **(29-2000)  EXCEEDING BUILDING OCCUPANT LOAD**

Complainant - Victim / Arresting Officer:     G.C. CREMENS

Bondsman / Surety: _____     Bond Amount: ____ 0.00

| Date of Offense | Date Warrant Issued | Date Committed to Jail | Date Released on Bond | Arraignment Date | Trial Date |
|---|---|---|---|---|---|
| 02/13/2005 | | | | 02/21/2005 | |

PROSECUTOR NAME:     *Virginia Nataway*        DEFENSE COUNSEL NAME:

ARRAIGNMENT:              ARRAIGNMENT:

TRIAL:              TRIAL:

PLEA OF DEFENDANT: [✓] GUILTY AS CHARGED    [ ] NOT GUILTY    [ ] GUILTY OF:

## ADJUDICATION

[✓] GUILTY AS CHARGED    [ ] NOT GUILTY    [ ] NOL-PROSSED    [ ] DISMISSED

[ ] GUILTY OF:

FEB 23 2005

DATE                    JUDGE, CITY OF MONTGOMERY

## ACTIONS, JUDGMENTS, CASE NOTES

SENTENCED TO _____ DAYS IN JAIL, SUSPEND _____ DAYS.

FINE: $ 500    COURT COST: $ 191    SUBPOENA / ALIAS WARRANT FEES: $

TOTAL FINE, COST & FEES: $ 691.00    PAYMENT DUE DATE: 8/1/05

+22 = 713 + 219.00 = $927.00



# City of Montgomery, Alabama
## Office of the Mayor

*Bobby N. Bright*
*Mayor*

*Legal Department*
*Walter R. Byars*
*City Attorney*

<u>City Council Members</u>

Charles W. Jinright – President
James A. Nuckles - Pro tem
Cornelius Calhoun
Willie Cook
Tim Head
Janet Thomas May
Glen O. Pruitt, Jr
Martha Roby
Jim Spear

February 16, 2005

Mr Richie Thomas
c/o Rose Supper Club, Inc
954 Highland Avenue
Montgomery, Alabama  36104

Mr Richie Thomas
6112 Dunwoody Court
Montgomery, Alabama  36117

*Re:*    *Violations of Exceeding Occupancy Capacity at Rose Supper Club, Inc*

Dear Mr Thomas:

I have been advised that the City of Montgomery received complaints on February 12th and February 13th regarding the overcrowding of the Rose Supper Club Following the complaints, an investigator from the Montgomery Fire Department had to close your facility due to the fact that you were over your maximum capacity of 300 occupants  On February 13th, a Uniform Non-Traffic Citation was issued to you due to your having a capacity of 599 occupants and on February 14th, another Uniform Non-Traffic Citation was issued due to a capacity of 446 occupants  The number of occupants over capacity in your business is unacceptable   The fact that you allowed it to happen two nights in a row demonstrates an egregious and reckless disregard for the safety of the patrons at your business and the laws of the City of Montgomery and State of Alabama

The seriousness of these infractions requires me to put you on notice that the City will be performing random checks on the Rose Supper Club every night   If your occupants exceed the maximum capacity allowed of 300 by one individual, I will issue an executive order to close your establishment until you can be brought before the City Council of the City of Montgomery to determine whether you will be allowed to continue with your business or if your license shall be revoked.

**DEFENDANT'S EXHIBIT**
**8**

Mr. Richie Thomas
February 16, 2005
Page -2-


If you have any questions or require additional information, please do not hesitate to contact me

Sincerely,

Bobby N. Bright
Mayor


BNB/kof

Date:                April 8, 2005

From:                G.C. Cremeens, Fire Investigator Lieutenant *GCC*

Time:                Approximately 0220

Address:             5050 Narrow Lane Rd.

Reference:           Overcrowding At Diamonds Entertainment

On the above date and approximate time I responded to the scene of multiple
code 6's at the request of Rescue 94. Upon arrival I assisted the medics with
the scene. I then turned my attention to the nearby night club, Diamonds
Entertainment. The parking lot was full and vehicles had been parked along
the side of the road. I entered the club and did an initial count and concluded
that the club was most probably over its maximum capacity of 299. I
instructed the security to have management tell all patrons to exit through
the front door. Meanwhile I had MPD officers posted at all other exits. After
doing the controlled count the total was 416 which is 117 over the maximum
allowed by the Fire Marshall's Office. Since Car 31 and 33 were on the
scene I had Chief Bolling and Chief Stoudenmier witness the count. After
concluding that the club was over capacity I wrote the owner, Kent Harold
Crenshaw, a summons to Municipal Court. I also instructed the owner that
he could not open until after his court date scheduled for Monday April 11,
2005.



DEFENDANT'S
EXHIBIT
**9**

| State of Alabama | COURT RECORD | Case Number |
|---|---|---|
| City of Montgomery | CASE ACTION SUMMARY | 2005CRS500168 |
| Form MMC-1010    Rev. 10/03 | | PAGE 1 OF 4 |

IN THE MUNICIPAL COURT OF _____ MONTGOMERY _____ , ALABAMA

*(Name of Municipality)*

MUNICIPALITY OF _____ MONTGOMERY _____ v. _____ KENT HAROLD CRENSHAW _____

Defendant

## DEFENDANT IDENTIFICATION AND INFORMATION

| Social Security Number | Date of Birth | Home Address | | |
|---|---|---|---|---|
| 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 | 06/28/1966 | 7536 WYNLAKES BLVD | | |
| Race | Sex | City | State | Zip Code |
| B | M | MONTGOMERY | AL | 36117 |
| Height | Weight | Home Telephone Number | | |
| | | | | |
| Eye Color | Hair Color | Employer Name & Address | | |
| | | | | |
| Driver License State | Driver License Number | City | State | Zip Code |
| AL | 5128223 | | | |
| Other / Distinguishing Features: | | Employer Telephone Number | | |

---

Offense / Charge: **(29-2000)  EXCEEDING BUILDING OCCUPANT LOAD**

Complainant - Victim / Arresting Officer: _____ G C CREMEENS _____

Bondsman / Surety: _____  Bond Amount: _____ 0.00 _____

| Date of Offense | Date Warrant Issued | Date Committed to Jail | Date Released on Bond | Arraignment Date | Trial Date |
|---|---|---|---|---|---|
| 04/08/2005 | | | | 04/11/2005 | |

---

| PROSECUTOR NAME: | | DEFENSE COUNSEL NAME: |
|---|---|---|
| ARRAIGNMENT: KNT | ARRAIGNMENT: | *lewis Giller* |
| TRIAL: | TRIAL: | *lewis Gilles* |

PLEA OF DEFENDANT: ☐ GUILTY AS CHARGED  ☐ NOT GUILTY  ☐ GUILTY OF:

---

## ADJUDICATION

☒ GUILTY AS CHARGED    ☐ NOT GUILTY    ☐ NOL-PROSSED    ☐ DISMISSED

☐ GUILTY OF:

APR 11 2005 _____ W. M _____

DATE        JUDGE, CITY OF MONTGOMERY

---

## ACTIONS, JUDGMENTS, CASE NOTES

SENTENCED TO _____ DAYS IN JAIL, SUSPEND _____ DAYS.

FINE: $ 100.00    COURT COST: $ 19.00    SUBPOENA / ALIAS WARRANT FEES: $

TOTAL FINE, COST & FEES: $ 29.00    PAYMENT DUE DATE: July 13 2005



DEFENDANT'S EXHIBIT
10

To:         D. G. Sambor, Captain

From:      Gary C Cremeens, Fire Investigator

Date:      February 19, 2004

Re:         Rose Supper Club

Sir;

On the above date at approximately 0135 I was notified by the Alarm Room that they had received a 911 call indicating that the Rose Supper Club was overcrowded  The call came from a cell phone with a call back of 334-430-9345. The caller stated her name was Rene. Before I could leave station 14 the Alarm Room called back and stated that PD had also called requesting the Fire Marshall to meet them at the above establishment

When I arrived at the Rose Supper Club, located at 954 Highland Avenue, it was apparent that 50 – 75 people had already exited and were congregating around the front of the business. I made a quick survey of the inside to determine whether the club was likely overcrowded. After the observation I believed that the club was over the capacity allowed by the Fire Marshall's office

I instructed the manager and security detail to close the club and instruct all people to exit through the front door. I posted a police officer at the side exit with instructions to make all patrons leave through the front door of the club. As the crowd left the club I used the hand counter provided by the City of Montgomery to get an accurate count  The total number that exited through the front door was 385. As stated above I observed at least 50 – 75 that had already left

While I was discussing my findings with the manager, Andre Hathcock, he stated that he had counted as many as 325. He further stated that some people had later left the club and he never restarted the count. I explained to him that he knew he was over at 301 and that he should have stopped allowing people in at that time.

While concentrating on the count as people exited the club I over heard a conversation. The conversation was between a PD officer and one of the

security guards  The security guard stated that they recently had a fight involving approximately 60 people  He also stated that he felt like there may have been as many as six hundred people in the club this date. I did not get the security guards name because he had left before I finished speaking with the manager.

I feel that this was a serious risk to the patrons inside the club in light of the recent night club fatalities involving fire and crowd panic. This club also has an upstairs on the interior which would further complicate an orderly egress in the event of an emergency. I explained to the manager that he was not to re-open until Codes and Standards inspected the club.

Gary C. Cremeens, Fire Investigator

*G. C. Cremeens*

Bureau of Investigations
Montgomery Fire Department


DEFENDANT'S
EXHIBIT
11

# MEMORANDUM

TO:             W.D. Davis, Assistant Chief

FROM:           J.R. Amsler, Assistant Chief
                Division of Codes & Standards

DATE:           February 13, 2007

SUBJECT:        NFPA Codes & Standards


The NFPA Codes & Standards are revised every three (3) years. The City Council adopts the NFPA codes when submitted by the Montgomery Fire Department for approval. In the year 2005, the City Council had in effect and had adopted the 2003 edition of the NFPA Codes & Standards. We had been enforcing the 2003 edition since the year 2003. In 2006, the City Council adopted the 2006 code and the Montgomery Fire Department has been enforcing that edition since that time.


JRA/bg



DEFENDANT'S
EXHIBIT
12

Prepared in
Duplicate

# MONTGOMERY FIRE DEPARTMENT
## DIVISION OF INVESTIGATION
MONTGOMERY, ALABAMA

Form 208-A

Date of Inquiry __4__ / __12__ / 20 __04__    Time of Inquiry: __1231__  ☒ AM ☐ PM

Business Name __ROSE SUPPER CLUB__ Owner/Manager on Duty __Richie Thomas__
RDT

Address __954 HIGH STREET__ Phone __264-2975__ Day Phone _____

Maximum Occupancy Allowed By Fire Marshal __300__ Occupancy Sign Present: ☒ Yes ☐ No

Amount Listed on Sign __360__ Occupant Count __436__ ☒ Actual ☐ Approximate

    Exits:                OK ☒    Blocked ☐  Locked ☐    Other ☐
    Lighted Exit Signs:   OK ☒    Repair/Replace ☐       Other ☐
    Emergency Lighting:   OK ☒    Repair/Replace ☐       Other ☐

### THE FOLLOWING ITEMS ARE IN VIOLATION OF THE FIRE CODES

Remarks: OCCUPANTS ASKED TO FILE OUT THE
FRONT DOOR BECAUSE COUNT WAS WELL
OVER 300, FINAL COUNT WAS 436.
136 OVER LEGAL LOAD, ACCORDING TO
RICHARD THOMAS. THE OVER CROWDING
WAS BECAUSE A LARGE NUMBER OF
PEOPLE CAME IN A SIDE DOOR WITHOUT
BEING COUNTED.
OCCUPANT WAS ALLOWED TO STAY OPEN AND
BRING IN 200 OCCUPANTS (No More THAN 200)
~~THE JWC~~

An inquiry has been conducted as to the number of patrons that presently occupy this establishment. The purpose
of the inquiry is to assure compliance with the stated maximum occupant load as determined by the Building
Inspections Department and Fire Department, City of Montgomery, Alabama. The inquiry includes the condition
and accessibility of exits and associated appurtenances. Noted violations are to be corrected in accordance with the
investigators instructions. Failure to comply will result in legal action, temporary closure of business and/or arrest.

Occupant's Signature                        Investigation Officer's Signature

_Richie Thomas_                             _illegible signature_

Fire Marshal's Office: 241-2916

2000 668

Prepared in
Duplicate

# MONTGOMERY FIRE DEPARTMENT
## DIVISION OF INVESTIGATION
MONTGOMERY, ALABAMA

Form 208-A

Date of Inquiry __05__ / __10__ / 20 __03__   Time of Inquiry: __0140__ ☐ AM ☐ PM

Business Name _ROSE SUPPER CLUB_ Owner/Manager on Duty _RICHIE THOMA_

Address _95H HIGH AVE_ Phone _264-2975_ Day Phone _399-28_

Maximum Occupancy Allowed By Fire Marshal _300_  Occupancy Sign Present: ☑ Yes ☐ No

Amount Listed on Sign _300_  Occupant Count _380_ ☐ Actual ☐ Approximate

Exits:                  OK ☑   Blocked ☐  Locked ☐   Other ☐
Lighted Exit Signs:     OK ☑   Repair/Replace ☐       Other ☐
Emergency Lighting:     OK ☑   Repair/Replace ☐       Other ☐

### THE FOLLOWING ITEMS ARE IN VIOLATION OF THE FIRE CODES

Remarks: _Counter - 388 Entered club      This is my_
_number count that entered club  RDT_

_ACCORDING TO THE OWNER'S OWN_
_COUNT THE CLUB IS OVER LEGAL_
_OCCUPANCY BY 88. ADVISED OWNER_
_TO CLOSE UNTILL MONDAY DUE TO_
_OBVIOUS AND INTENTIONAL_
_OVER CROWDING._

_OWNER IS TO CALL FIRE MARSHAL'S OFFICE_
_MONDAY @ 8:00 AM 241-2916_

An inquiry has been conducted as to the number of patrons that presently occupy this establishment. The purpose of the inquiry is to assure compliance with the stated maximum occupant load as determined by the Building Inspections Department and Fire Department, City of Montgomery, Alabama. The inquiry includes the condition and accessibility of exits and associated appurtenances. Noted violations are to be corrected in accordance with the investigators instructions. Failure to comply will result in legal action, temporary closure of business and/or arrest

Occupant's Signature

_Richie Thomas_

Investigation Officer's Signature

# MONTGOMERY FIRE DEPARTMENT

DIVISION OF INVESTIGATION

Montgomery, Alabama

DATE OF INQUIRY __3 16 2000__ 19 __ TIME __12:52 AM__ COMPLETED __1:35 AM__

OWNER/MANAGER __RICHIE THOMAS__ OCCUPANT __ROSE SUPPER CLUB__

ADDRESS __054 HIGH ST.__ TELEPHONE __264-2975__

MAXIMUN OCCUPANCY __300__ PER SIGN __✓__ OTHER _____

OCCUPANT COUNT __450__ ACTUAL _____ APPROXIMATE __✓__

EXITS:                        OK ☑    BLOCKED ☐    LOCKED ☐    OTHER ☐

LIGHTED EXIT SIGNS:    OK ☑    REPAIR/REPLACE ☐                OTHER ☐

EMERGENCY LIGHTING:   OK ☑    REPAIR/REPLACE ☐                OTHER ☐

### THE FOLLOWING ITEMS ARE IN VIOLATION OF THE FIRE CODES

REMARKS: __GROSSLY OVER OCCUPANT LOAD__
__TOLD MANAGER TO SHUT CLUB DOWN - COMPLIED__

An Inquiry has been conducted as to the number of patrons that presently occupy this establishment. The purpose of the inquiry is to assure compliance with the stated maximum occupant load as determined by the Building Inspections Department and Fire Department, City of Montgomery, Alabama. The inquiry includes the condition and accessibility of exits and associated appurtenances. Noted violations are to be corrected in accordance with the investigators instructions. Failure to comply will result in legal action.

DATE OF CALLBACK                                INVESTIGATING OFFICER

_____                    _____

_____
OCCUPANT S SIGNATURE

To:        File

From:      Investigator J T Worrell

Date:      3/16/00

Re:        Rose Supper Club


On 3/15/00 at approximately 10:30 p.m. this writer was contacted by the Montgomery Police Department and advised that the Rose Supper Club had a high occupant count  The officer stated that there were approximately 200 people outside of the club waiting to get in  The officer further stated that the manager was not letting any more people inside  This writer asked if I needed to come out and do an inspection in which the officer replied that they had the situation under control.

At approximately 12:30 a.m. this writer was contacted by the alarm room.  Dispatcher Bibb stated that the police needed me at the Rose Supper Club  On arrival at the club, this writer noted approximately 100 people standing in line waiting to get inside of the front door.  This writer along with unit #330 of the P.D talked with the manager Richie Thomas  Mr Thomas stated that he had approximately 330 inside and his max was 300.  This writer along with unit #330 did an approximate occupant count.  This writer counted 450 person and stopped with approximately 200 left.  This writer is certain the occupant count was 450 and may have exceeded 650  Mr Thomas admitted being overcrowded upon my arrival.  Mr Thomas was grossly over his legal occupancy  The operation of this assembly in this manner poses a life safety hazard to all occupants as well as employees.

This writer advised Mr Thomas that he was putting the lives of his employees and customers in danger with his gross neglect and reckless manner.  Mr Thomas was advised that this writer could not permit this assembly to continue  Mr Thomas was advised that he needed to evacuate the club in a safe manner, in which he complied  The police department sent additional units to help with the disbursal of the crowd  The building was evacuated at approximately 1:30 a.m.

Prepared in
Duplicate

Form 208-,

# MONTGOMERY FIRE DEPARTMENT

DIVISION OF INVESTIGATION

Montgomery, Alabama

DATE OF INQUIRY___ 8-27 ___ 19 97 TIME 10:30 COMPLETED 11:15
OWNER/MANAGER _Richard Thomas_ OCCUPANT_ Top Flight
ADDRESS __954 Highland Ave__ TELEPHONE __264-2975

MAXIMUN OCCUPANCY___ 300 ___ PER SIGN ___ ✓ ___ OTHER _____
OCCUPANT COUNT ____ 400 ____ ACTUAL _____ APPROXIMATE ___ ✓

| EXITS: | OK ☐ | BLOCKED ☒ LOCKED ☐ | OTHER ☐ |
| LIGHTED EXIT SIGNS: | OK ☒ | REPAIR/REPLACE ☐ | OTHER ☐ |
| EMERGENCY LIGHTING: | OK ☒ | REPAIR/REPLACE ☐ | OTHER ☐ |

### THE FOLLOWING ITEMS ARE IN VIOLATION OF THE FIRE CODES

REMARKS: #1 _Rear exit blocked * Street blocked by people & veh._
#2 _Over ~~crowd~~ occupied_
_Over approximately 100 persons_

_*Asked owner to remove 75 to 100 occupants_
_30 minutes later occupancy load still over by_
_60 to 75 persons_

_* Occupancy level corrected._
_* P.D. cleared street._

An Inquiry has been conducted as to the number of patrons that presently occupy this establishment. The purpose of the inquiry is to assure compliance with the stated maximum occupant load as determined by the Building Inspections Department and Fire Department, City of Montgomery, Alabama. The inquiry includes the condition and accessibility of exits and associated appurtenances. Noted violations are to be corrected in accordance with the investigators instructions. Failure to comply will result in legal action

DATE OF CALLBACK

INVESTIGATING OFFICER

OCCUPANT S SIGNATURE

MEMORANDUM

TO        :Major R E  Dixon

FROM      :Captain C S. Duffee

SUBJECT   :Incident at Top Flight Disco (8/27/97)

DATE      :8/28/97

On 8/27/97 at approximately 2157 Hrs., Unit 204 was dispatched to Top Flight Disco on the street being blocked. I heard the call and responded and was the first unit on the scene. When I arrived, I observed one lane of the east bound side blocked by a crowd numbering approximately 300. The front door of the business was completely blocked by people waiting to enter the club. The street next to the club had several cars parked illegally, making it almost impossible to drive down  When Unit 204 arrived, I had him call wrecker trucks so that we could begin clearing the roadway.A total of four cars were towed Before attempting to deal with and disperse the crowd, I called two additional Second shift patrol units, two K-9 units, one Park Police unit,the ROT Truck and two additional Second shift patrol supervisors for a total of 9 units. After the units arrived, we made our way through the crowd to find the owner of the club.After talking to Squirrel (owner), I learned that he had only one security guard present at the time  He stated that he had not expected a problem, therefore he had the other security guards coming in at 2330 hours. After checking the inside of the club, I had a Arson Investigator respond because the club in my opinion was overcrowded and therefore unsafe. Investigator Sambor responded and found a rear exit blocked by chairs. He also stated the club was overcrowded by approximately 75 people.While checking the inside, units on the outside began clearing the street and the sidewalk of people. We also cleared approximately 75 people from inside the club.Crowds on the inside and outside were cleared without incident. Because it took a period of approximately 45 minutes to clear the streets and club, there was an additional 7 units present when third shift got 10-8 bringing the total number of units to 16. Squirrel was told that the club would be closed down for the night if we had any more problems. On 8/28/97, Lt. T.D. Jones who was present with the ROT Team, told me that the security guard present said that their contract ran out on Saturday 8/30/97 and that they would no longer be present at that location. It is unknown if other security personnel will be present

Captain C.S. Duffee



DEFENDANT'S
EXHIBIT
*13*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KENDRICK L. DORTCH, et al )
)
    Plaintiffs, )
)
vs )CASE NO. 2:07-cv-1034-MEF
)
THE CITY OF MONTGOMERY, et al, )
)
    Defendants )

## KENDRICK DORTCH'S RESPONSE TO DEFENDANT
### CREMEENS' DISCOVERY REQUESTS

COMES NOW Richard Thomas and responds to the Defendant's discovery

requests

### REQUEST FOR ADMISSIONS

| 1 | Request for Admission # 1 | Response: | Admit |
|---|---|---|---|
| 2 | Request for Admission # 2 | Response: | Deny |
| 3 | Request for Admission # 3 | Response: | Admit |
| 4 | Request for Admission # 4 | Response: | Deny |
| 5 | Request for Admission # 5 | Response: | Deny |
| 6 | Request for Admission # 6 | Response: | Deny |
| 7 | Request for Admission # 7 | Response: | Deny |
| 8 | Request for Admission # 8 | Response: | Deny |
| 9 | Request for Admission # 9 | Response: | Admit |

### FIRST SET OF INTERROGATORIES

1.    Interrogatory # 1    Response:    No

I declare under penalty of perjury that the foregoing is true and correct.

Done this _4th_ day of _MAY_ 2008.

Richie D Thomas,

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KENDRICK L. DORTCH, et al )
)
    Plaintiffs, )
)
vs. )CASE NO. 2:07-cv-1034-MEF
)
THE CITY OF MONTGOMERY, et al, )
)
    Defendants. )

## KENDRICK DORTCH'S RESPONSE TO DEFENDANT CREMEENS' DISCOVERY REQUESTS

COMES NOW Kendrick Dortch and responds to the Defendant's discovery

requests

## REQUEST FOR ADMISSIONS

1.    Request for Admission # 1    Response:    Admit

2.    Request for Admission # 2    Response:    Deny

3.    Request for Admission # 3    Response:    Admit

4.    Request for Admission # 4.    Response:    Deny

5    Request for Admission # 5    Response:    Deny

6    Request for Admission # 6.    Response:    Deny

7    Request for Admission # 7.    Response:    Deny

8.    Request for Admission # 8    Response:    Deny

9    Request for Admission # 9    Response:    Admit

## FIRST SET OF INTERROGATORIES

1    Interrogatory # 1    Response:    No

I declare under penalty of perjury that the foregoing is true and correct.

Done this ___4 th___ day of ___May___ 2008.

Kendrick L. Dortch

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENDRICK L. DORTCH, and<br>RICHARD THOMAS, as owner of<br>the ROSE SUPPER CLUB, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. **2:07cv1034-MEF** |
| vs. | ) ) | |
| THE CITY OF MONTGOMERY, and<br>LT. G.C. CREMEENS, | ) ) ) | |
| Defendants. | ) | |

## DEFENDANT G.C. CREMEENS' FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFFS KENDRICK DORTCH AND RICHARD THOMAS AS OWNER OF ROSE SUPPER CLUB

Pursuant to Rule 36, Federal Rules of Civil Procedure Defendant requests that

Plaintiffs, **separately and severally** admit or deny the following request for admissions:

1.     That Plaintiff Thomas has pled guilty to overcrowding or over capacity of the

Rose Supper Club on occasions prior to November 25, 2005.

**Response:**


2.     That Plaintiff Dortch has pled guilty to overcrowding or over capacity of the

Rose Supper Club on occasions prior to November 25, 2005.

**Response:**


3.     That the occupancy of patrons designated by the City of Montgomery for

Rose Supper Club on November 25, 2005 was 300.

**Response:**

4. That on November 25, 2005 the number of patrons in the Rose Supper Club exceeded the occupancy of 300 designated for that establishment by the City of Montgomery.

**Response:**

5. That the occupancy of patrons designated by the City of Montgomery for Rose Supper Club on February 13, 2005 was 300.

**Response:**

6. That on February 13, 2005 the number of patrons in the Rose Supper Club exceeded the occupancy of 300 designated for that establishment by the City of Montgomery.

**Response:**

7. That the occupancy of patrons designated by the City of Montgomery for Rose Supper Club on February 14, 2005 was 300.

**Response:**

8. That on February 14, 2005 the number of patrons in the Rose Supper Club exceeded the occupancy of 300 designated for that establishment by the City of Montgomery

**Response:**

2

9.    That the decision by law enforcement to charge or arrest employees of a facility that is overcrowded or over capacity for its patrons is a discretionary function.

**Response:**


10.    That overcrowding or over capacity of patrons creates a significant risk to the health and safety of the patrons of an establishment.

**Response:**


11.    That overcrowding or over capacity of patrons presents certain fire hazards to the patrons of an establishment.

**Response:**


12.    That Plaintiff Dortch was responsible for maintaining the properly designated capacity of the Rose Supper Club on November 25, 2005.

**Response:**


13.    That Plaintiff Thomas was responsible for maintaining the properly designated capacity of the Rose Supper Club on November 25, 2005

**Response:**

3

Respectfully submitted,

_WESLEY ROMINE (ROM002)_
**WESLEY ROMINE (ROM002)**
**ONE OF THE ATTORNEYS FOR**
**DEFENDANT G.C. CREMEENS**

**OF COUNSEL:**
**MORROW, ROMINE & PEARSON, P.C.**
**P.O. Box 4804**
**122 South Hull Street**
**Montgomery, AL 36103-4804**
**Telephone: (334) 262-7707**
**Facsimile: (334) 262-7742**
**Email:** wromine@mrplaw.com
rsmorrow@mrplaw.com
jhpearson@mrplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2008, I have served the foregoing documents to the following via U.S. Mail, postage prepaid:

Hon. Fred F. Bell
1015 south McDonough Street
Montgomery, AL 36104

Hon. Kimberly O. Fehl
City of Montgomery Legal Division
P.O. Box 1111
Montgomery, AL 36101-1111

Respectfully submitted,

_WESLEY ROMINE (ROM002)_
WESLEY ROMINE (ROM002)
One of the Attorneys for Defendant
L.C. Cremeens
Morrow, Romine & Pearson, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:    (334) 262-7707
Facsimile:    (334) 262-7742
Email:       wromine@mrplaw.com

4

DEFENDANT'S
EXHIBIT
*14*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

KENDRICK L. DORTCH, et al          )
                                   )
    Plaintiffs,                 )
                                   )
vs                                 )CASE NO. 2:07-cv-1034-MEF
                                   )
THE CITY OF MONTGOMERY, et al,     )
                                   )
    Defendants.                 )

## RICHARD THOMAS' RESPONSE TO DEFENDANT
## CREMEENS' DISCOVERY REQUESTS

COMES NOW Richard Thomas and responds to the Plaintiff's discovery requests

## REQUEST FOR ADMISSIONS

| | | | |
|---|---|---|---|
| 1 | Request for Admission # 1. | Response: | Admit |
| 2 | Request for Admission # 2. | Response: | Deny |
| 3. | Request for Admission # 3. | Response: | Deny |
| 4 | Request for Admission # 4. | Response: | Deny |
| 5 | Request for Admission # 5 admit or deny. | Response: | I am without sufficient information to |
| 6. | Request for Admission # 6. admit or deny. | Response: | I am without sufficient information to |
| 7. | Request for Admission # 7. admit or deny. | Response: | I am without sufficient information to |
| 8. | Request for Admission # 8 admit or deny. | Response: | I am without sufficient information to |
| 9 | Request for Admission # 9. admit or deny | Response: | I am without sufficient information to |
| 10 | Request for Admissions # 10. admit or deny. | Response: | I am without sufficient information to |

11.    Request for Admissions # 11.     Response:    I am without sufficient information to admit or deny.

12.    Request for Admissions # 12.     Response:    Deny

13.    Request for Admissions # 13     Response:    Admit

## FIRST SET OF INTERROGATORIES

1.    Interrogatory # 1.    Response:    No

2    Interrogatory # 2    Response:    I make no such a contention

3    Interrogatory # 3    Response:    See response to Interrogatory # 2

4    Interrogatory # 4.    Response:    I make no such contention.

5.    Interrogatory # 5.    Response:    See response to Interrogatory # 4

6    Interrogatory # 6    Response:    I do not possess sufficient knowledge or information to know if the acts of Mr Cremeens were within his discretionary function

7    Interrogatory # 7.    Response:    I have not made that allegation.

8    Interrogatory # 8    Response:    I have not made that allegation..

9    Interrogatory # 9    Response:
a. I have no knowledge that Dortch had violated any criminal law.
b I have no witnesses to support my contention

10.    Interrogatory # 10    Response:    To my knowledge, no.

11    Interrogatory # 11.    Response:
a.     I do not know, as a fact, that the Rose was over capacity.
b     I do not have any witnesses to support my contention that I do not know, as a fact, that the Rose was not over capacity.

12.    Interrogatory # 12.    Response:    Owner, Richard Thomas; Employee, Kendrick Dortch, Bar Manager

13.    Interrogatory # 13.    Response:
a.     The Rose:  Between $21,000.00 and $23,000 00
b.     Approximately $7,500.00

14    Interrogatory # 14    Response:    Kendrick Dortch alleges lost income of $25, 500 00

15    Interrogatory # 15.    Response:    None.

16.    Interrogatory # 16.    Response:    I have no knowledge that the Rose was overcrowded at this time.

17.    Interrogatory # 17    Response:    I have no recollection the Rose was overcrowded at this time.

18    Interrogatory # 18.    Response    2 times. a. Fined; b. Pled guilty.

19.    Interrogatory #19.    Response:    See the various complaints that are in the possession, custody, and control of the City of Montgomery. Mr. Cremeens had not observed Plaintiff Dortch violate any criminal law. Yet he wrote a complaint. On two different occasions he charged Plaintiff Dortch with overcrowding. After he learned that overcrowding was not a criminal offense; he still attempted to add facts to support a claim of reckless endangerment. Each time, additional "facts" were added to support his claims; these additional facts were not stated in the original complaint.

20.    Interrogatory # 18,    Response: See response to Interrogatory #19.
a.    To my knowledge, Mr. Cremeens knew that Dortch had not violated any criminal laws. He had no cause to arrest Dutch, yet he did. After he and the City realized that over crowding was not a criminal offense, he reconstructed the complaint to allege reckless endangerment
b.    Kendrick Dortch, the Plaintiff.

21    Interrogatory # 21.    Response:
a.    In court, Mr. Cremeens stated that the only persons who had been charged charged with reckless endangerment were those persons charged during the 2005 Thanksgiving Holiday at the Diamonds, Rose, and the Cotton Club because they had challenged him and the City on the overcrowding charge.
b    Kendrick Dortch, the Plaintiff

22.    Interrogatory # 22    Response:    I have not made this contention.

23    Interrogatory # 23.    Response:    No response is required.

24.    Interrogatory # 24.    Response:    State Law.

25.    Interrogatory # 25.    Response:    At this juncture, my attorney has not stated that he would call an expert. If he does, I will provide this information to the Defendants immediately.

I declare under penalty of perjury that the foregoing is true and correct.

Done this _10th_ day of _May_ 2008.

Richie D Thomas,

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| KENDRICK L. DORICH, et al | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs | )CASE NO. 2:07-cv-1034-MEF |
| | ) |
| THE CITY OF MONTGOMERY, et al, | ) |
| | ) |
| Defendants | ) |

### KENDRICK DORTCH'S RESPONSE TO DEFENDANT
### CREMEENS' DISCOVERY REQUESTS

COMES NOW Kendrick Dortch and responds to the Plaintiff's discovery requests

### REQUEST FOR ADMISSIONS

1.   Request for Admission # 1.        Response:    Admit

2.   Request for Admission # 2.        Response:    Deny

3.   Request for Admission # 3.        Response:    Deny

4.   Request for Admission # 4.        Response:    Deny

5.   Request for Admission # 5.        Response:    I am without sufficient information
     to admit or deny

6.   Request for Admission # 6.        Response:    I am without sufficient information
     to admit or deny

7.   Request for Admission # 7.        Response:    I am without sufficient information
     to admit or deny

8.   Request for Admission # 8         Response:    I am without sufficient information
     to admit or deny.

9.   Request for Admission # 9.        Response:    I am without sufficient information
     to admit or deny

10.  Request for Admissions # 10       Response:    Deny.

11.  Request for Admissions # 11 .    Response:    Deny

12.  Request for Admissions # 12    Response:    Deny

13.  Request for Admissions # 13 .    Response:    Admit

## FIRST SET OF INTERROGATORIES

1.    Interrogatory # 1 .    Response:    No

2.    Interrogatory # 2 .    Response:    I make such a contention .

3.    Interrogatory # 3 .    Response:    See response to Interrogatory # 2

4.    Interrogatory # 4 .    Response:    I make no such contention .

5.    Interrogatory # 5 .    Response:    See response to Interrogatory # 4 .

6.    Interrogatory # 6 .    Response:    I do not know . I do not possess sufficient
knowledge to know if the acts of Mr . Cremeens were within his discretionary function

7    Interrogatory # 7    Response:    I have not made the allegation

8.    Interrogatory # 8    Response:    See response to Interrogatory # 7

9.    Interrogatory # 9    Response:
    a .  To my knowledge, I had violated no criminal law
    b .  I have no witness to support my contention .

10    Interrogatory # 10 .    Response:    To my knowledge, no .

11.    Interrogatory # 11 .    Response:
    a    I do not know that, as a fact, the Rose was over capacity .
    b    I do not  have any witnesses to support my contention that I do not know, as a
        fact, that the Rose was over capacity .

12.    Interrogatory # 12    Response:    Owner, Richard Thomas; Employee, Kendrick
Dortch, Bar Manager .

13.    Interrogatory # 13 .    Response:
    a .    Mr . Thomas states  between $21,000 .00 and $23,000 .00
    b .    Approximately $7,500 .00

14.    Interrogatory # 14 .    Response:    Lost income  $25, 500 .00

2

15    Interrogatory # 15.    Response:    None.

16.    Interrogatory # 16    Response:    I have no knowledge that the Rose was overcrowded at this time.

17    Interrogatory # 17    Response:    I have no knowledge that the Rose was overcrowded at this time

18.    Interrogatory # 18.    Response    Nov. 25, 2005, acquitted.

19    Interrogatory #19.    Response:    See the various complaints that are in the possession, custody, and control of the City of Montgomery. Mr Cremeens had not observed me violate any criminal law. Yet he wrote a complaint. On two different occasions he charged me with overcrowding. After he learned that overcrowding was not a criminal offense; he still attempted to add facts to support a claim of reckless endangerment Each time, additional "facts" were added to support his claims; these additional facts were not stated in the original complaint.

20    Interrogatory # 18,    Response: See response to Interrogatory #19.
       a.    Mr. Cremeens knew that I had not violated any criminal laws He had no cause to arrest me; yet he did. After he and the City realized that over crowding was not a criminal offense, he reconstructed the complaint to allege reckless endangerment.
       b    Richard Thomas, the owner of the Rose

21    Interrogatory # 21    Response:
       a    In court, Mr Cremeens stated that the only persons who had been charged charged with reckless endangerment were those persons charged during the 2005 Thanksgiving Holiday at the Diamonds, Rose, and the Cotton Club because they had challenged him and the City on the overcrowding charge.
       b.    Richard Thomas, the owner of the Rose

22    Interrogatory # 22    Response:    I have never made this contention.

23    Interrogatory # 23.    Response:    No response is required.

24.    Interrogatory # 24    Response:    State Law.

25    Interrogatory # 25.    Response:    At this juncture, my attorney has not stated that he would call an expert If he does, I will provide this information to the Defendants immediately.

I declare under penalty of perjury that the foregoing is true and correct.

Done this _____ day of _____ M A y _____ 2008.

_____

Kendrick L. Dortch

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KENDRICK L. DORTCH, and )
RICHARD THOMAS, as owner of )
the ROSE SUPPER CLUB, )
)
     Plaintiffs, )
)   CIVIL ACTION NO. <u>2:07cv1034-MEF</u>
vs. )
)
THE CITY OF MONTGOMERY, and )
LT. G.C. CREMEENS, )
)
     Defendants. )

<u>DEFENDANT G.C. CREMEENS' FIRST SET OF REQUEST FOR ADMISSIONS TO
PLAINTIFFS KENDRICK DORTCH AND RICHARD THOMAS
AS OWNER OF ROSE SUPPER CLUB</u>

    Pursuant to Rule 36, Federal Rules of Civil Procedure Defendant requests that

Plaintiffs, **separately and severally** admit or deny the following request for admissions:

    1.    That Plaintiff Thomas has pled guilty to overcrowding or over capacity of the

Rose Supper Club on occasions prior to November 25, 2005.

    **Response:**

    2    That Plaintiff Dortch has pled guilty to overcrowding or over capacity of the

Rose Supper Club on occasions prior to November 25, 2005.

    **Response:**

    3.    That the occupancy of patrons designated by the City of Montgomery for

Rose Supper Club on November 25, 2005 was 300.

    **Response:**

4.    That on November 25, 2005 the number of patrons in the Rose Supper Club exceeded the occupancy of 300 designated for that establishment by the City of Montgomery.

**Response:**

5.    That the occupancy of patrons designated by the City of Montgomery for Rose Supper Club on February 13, 2005 was 300.

**Response:**

6    That on February 13, 2005 the number of patrons in the Rose Supper Club exceeded the occupancy of 300 designated for that establishment by the City of Montgomery.

**Response:**

7    That the occupancy of patrons designated by the City of Montgomery for Rose Supper Club on February 14, 2005 was 300.

**Response:**

8.    That on February 14, 2005 the number of patrons in the Rose Supper Club exceeded the occupancy of 300 designated for that establishment by the City of Montgomery.

**Response:**

2

9.    That the decision by law enforcement to charge or arrest employees of a facility that is overcrowded or over capacity for its patrons is a discretionary function.

**Response:**

10.    That overcrowding or over capacity of patrons creates a significant risk to the health and safety of the patrons of an establishment.

**Response:**

11.    That overcrowding or over capacity of patrons presents certain fire hazards to the patrons of an establishment

**Response:**

12.    That Plaintiff Dortch was responsible for maintaining the properly designated capacity of the Rose Supper Club on November 25, 2005.

**Response:**

13    That Plaintiff Thomas was responsible for maintaining the properly designated capacity of the Rose Supper Club on November 25, 2005.

**Response:**

3

Respectfully submitted,

_____

**WESLEY ROMINE (ROM002)**
**ONE OF THE ATTORNEYS FOR**
**DEFENDANT G.C. CREMEENS**

**OF COUNSEL:**
**MORROW, ROMINE & PEARSON, P.C.**
**P.O. Box 4804**
**122 South Hull Street**
**Montgomery, AL 36103-4804**
**Telephone:  (334) 262-7707**
**Facsimile:    (334) 262-7742**
**Email:        wromine@mrplaw.com**
               **rsmorrow@mrplaw.com**
               **jhpearson@mrplaw.com**

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2008, I have served the foregoing documents to the following via U.S. Mail, postage prepaid:

Hon. Fred F. Bell
1015 south McDonough Street
Montgomery, AL 36104

Hon. Kimberly O. Fehl
City of Montgomery Legal Division
P.O. Box 1111
Montgomery, AL 36101-1111

Respectfully submitted,

_____

WESLEY ROMINE (ROM002)
One of the Attorneys for Defendant
L.C. Cremeens
Morrow, Romine & Pearson, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:  (334) 262-7707
Facsimile:    (334) 262-7742
Email:        wromine@mrplaw.com

4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TIMOTHY CRENSHAW, and<br>KENT CRENSHAW, as owner of<br>the DIAMONDS CLUB,<br><br>     **Plaintiffs,**<br><br>vs.<br><br>THE CITY OF MONTGOMERY, and<br>LT. G.C. CREMEENS,<br><br>     **Defendants.** | )<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO. <u>2:07cv1035-MEF</u><br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT G.C. CREMEENS' FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFFS TIMOTHY CRENSHAW AND KENT CRENSHAW AS OWNER OF DIAMONDS CLUB

Pursuant to Rule 36, Federal Rules of Civil Procedure Defendant requests that Plaintiffs, **separately and severally** admit or deny the following request for admissions:

1. That Plaintiff Kent Crenshaw has pled guilty to overcrowding or over capacity of the Diamonds Club on occasions prior to November 24, 2005.

**Response:**


2. That Plaintiff Timothy Crenshaw has pled guilty to overcrowding or over capacity of the Diamonds Club on occasions prior to November 24, 2005

**Response:**


3. That the occupancy of patrons designated by the City of Montgomery for Diamonds Club on November 24, 2005 was 299

**Response:**

4.    That on November 24, 2005 the number of patrons in the Diamonds Club exceeded the occupancy of 299 designated for that establishment by the City of Montgomery.

**Response:**


5    That the decision by law enforcement to charge or arrest employees of a facility that is overcrowded or over capacity for its patrons is a discretionary function

**Response:**


6.    That overcrowding or over capacity of patrons creates a significant risk to the health and safety of the patrons of an establishment.

**Response:**


7.    That overcrowding or over capacity of patrons presents certain fire hazards to the patrons of an establishment

**Response:**


8.    That Plaintiff Timothy Crenshaw was responsible for maintaining the properly designated capacity of the Diamonds Club on November 24, 2005.

**Response:**


9.    That Plaintiff Kent Crenshaw was responsible for maintaining the properly

2

designated capacity of the Diamonds Club on November 24, 2005.

    **Response:**

                              Respectfully submitted,

                              Wesley Romine

                              **WESLEY ROMINE (ROM002)**
                              **ONE OF THE ATTORNEYS FOR
DEFENDANT G.C. CREMEENS**

**OF COUNSEL:**
**MORROW, ROMINE & PEARSON, P.C.**
**P.O. Box 4804**
**122 South Hull Street**
**Montgomery, AL 36103-4804**
**Telephone: (334) 262-7707**
**Facsimile:  (334) 262-7742**
**Email:       wromine@mrplaw.com**
                **rsmorrow@mrplaw.com**
                **jhpearson@mrplaw.com**

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2008, I have served the foregoing documents to the following via U.S. Mail, postage prepaid:

Hon. Fred F. Bell
1015 south McDonough Street
Montgomery, AL 36104

Hon. Kimberly O. Fehl
City of Montgomery Legal Division
P.O. Box 1111
Montgomery, AL 36101-1111

Respectfully submitted,

WESLEY ROMINE (ROM002)
One of the Attorneys for Defendant
L.C. Cremeens
Morrow, Romine & Pearson, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:    (334) 262-7707
Facsimile:    (334) 262-7742
Email:        wromine@mrplaw.com

4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KENDRICK L. DORTCH, and )
RICHARD THOMAS, as owner of )
the ROSE SUPPER CLUB, )
 )
    Plaintiffs, )
 )    CIVIL ACTION NO.  2:07cv1034-MEF
vs. )
 )
THE CITY OF MONTGOMERY, and )
LT. G.C. CREMEENS, )
 )
    Defendants. )

## DEFENDANT G.C. CREMEENS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS KENDRICK DORTCH AND RICHARD THOMAS AS OWNER OF ROSE SUPPER CLUB

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant G.C. Cremeens propounds the following interrogatories to the Plaintiffs Kendrick Dortch and Richard Thomas as owner of the Rose Supper Club to be answered **separately and severally** within thirty (30) days after service of the interrogatories.

1.    Do you or your attorney or any person acting on your/his behalf have photographs, statements, tape recordings, video tapes or transcription of tape recording(s) of or from any individual Defendant or any official, employee or agent of the City of Montgomery who Plaintiff or his attorney maintains has significant enough authority to allegedly bind the Defendant(s) by his or her statements or actions?

    a.    If so, state the name, title or position(s) and present place of employment of the individual(s) who gave the statement or whose conversation was taped or recorded or videotaped or photographed;

    b.    state the name, address and present place of employment of the

person to whom the statement was given or who participated or took part in the taped or recorded conversation or videotaping or photography.

**Response:**


2.    Is it the contention of the Plaintiff(s) that overcrowding or excess capacity of patrons in the Rose Supper Club does not create a significant risk to the health and safety of the patrons?

**Response:**

3.    If the answer to the preceding interrogatory is in the affirmative, please state:

a.    the basis of facts or principle of law which supports that contention;

b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention.

**Response:**

4    Is it the contention of the Plaintiff(s) that overcrowding or excess capacity of patrons in the Rose Supper Club does not create certain fire safety hazards to patrons in the establishment?

**Response:**

5.    If the answer to the preceding interrogatory is in the affirmative, please state:

a.    the basis of facts or principle of law which supports that contention;

b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention

2

**Response:**

6.    In the event that it is the contention of the Plaintiff(s) that the acts of Defendant Cremeens in arresting or charging Plaintiff(s) with being over capacity or overcrowding were not within his discretionary function as a law enforcement officer please state

      a.    the basis of the facts which support your contention;

      b.    any case or other legal authority that supports your contention.

**Response:**

7    In regard to your contention that white establishments that serve alcohol have not been charged or prosecuted with being over capacity (or overcrowded), please state the following:

      a.    the basis of the facts which support that contention;

      b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention.

**Response:**

8.    In regard to your contention that the management of white establishments

3

that serve alcohol have not been arrested, charged or prosecuted for being over capacity (or overcrowded), please identify the name and address of each such establishment.

      a.     state the date you allege that such establishment(s) was over capacity or overcrowded but that no action was taken by Defendants against it/them.

**Response:**



9.     In the event that it is your contention that Defendant Cremeens did not have probable cause to arrest or charge Kendrick Dortch with the operation of an establishment that was over capacity or overcrowded on or about November 25, 2005, please state specifically the following:

      a.     describe the basis of the facts or legal principles which demonstrate the absence of probable cause to arrest;

      b     the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention.

**Response:**



10.    On November 25, 2005 was the Rose Supper Club over its maximum capacity for patrons or overcrowded?

**Response:**

4

11. In the event the preceding interrogatory is answered in the negative, please state:

a. the basis of your contention that the Rose Supper Club was not overcrowded or over capacity on said date;

b. the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention

**Response:**

12. Please state the role in the operation of the Rose Supper Club of each individual answering these interrogatories (Kendrick Dortch and Richard Thomas) on November 25, 2005, i.e. manager, doorkeeper, owner, bartender, patron, etc.).

**Response:**

13. In regard to the claims on behalf of the Rose Supper Club that it suffered a revenue loss as a result of being closed after the arrest of Plaintiff Dortch on November 25, 2005, please state the following:

a. the amount of revenue alleged to have been lost;

b. how much in attorneys fees were incurred by Rose Supper Club as a result of the closure;

c. how much in attorneys fees were incurred by Rose Supper Club in

5

defending the charge of or prosecution for overcrowding.

    **Response:**

14.    In regard to the claim of Plaintiff Dortch that he was caused to lose money as a result of his arrest on November 25, 2005, please itemize each element of money lost as stated in paragraph 27 of your complaint.

    **Response:**

15.    As a result of any claim for mental anguish that you have arising from the facts alleged in your complaint, please state the name, present address and occupation of each physician, psychiatrist, medical provider, clergyman, counselor or other individual who has assisted or responded to that condition or treated you for it.

    **Response:**

16.    Please state if the Rose Supper Club was over capacity for patrons or overcrowded on February 13, 2005.

    **Response:**

17.    Please state if the Rose Supper Club was over capacity for patrons or overcrowded on February 14, 2005

**Response:**


18.    Please state each time that you have been arrested or cited as a result of overcrowding or over capacity of patrons at the Rose Supper Club.

a.    What was the result of the arrest or citation, i.e. conviction, acquittal, nolle prosse, etc.

b    In the event of conviction, did you plead guilty?

**Response:**


19.    In regard to your contention in paragraph 25 of your complaint that Defendant Cremeens "fabricated facts" or added to or changed facts, please state what facts you alleged to have been fabricated.

**Response:**


20.    In regard to your contention that Defendant Cremeens acted maliciously or knowingly to rob Plaintiffs of their civil rights, please state specifically the following:

a.    describe the basis of facts or principle of law which demonstrates such

7

malice or that the actions of Cremeens were designed to deprive Plaintiffs of civil rights;

      b     the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention.

**Resposne:**

21.    In regard to paragraph 45 of the complaint in which you alleged that Defendant Cremeens acted to retaliate against Plaintiff Dortch, please state specifically the following:

      a.    describe the basis of the facts or legal principle which demonstrates such retaliation;

      b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention.

**Response:**

22.    Do Plaintiffs contend that the occupancy number for patrons at the Rose Supper Club should be higher than that determined by the City of Montgomery

**Response:**

23.    If the answer to the preceding interrogatory is in the affirmative, please state

8

specifically the following:

   a.    the basis of the facts or principle of law or code which demonstrates that the capacity should be designated higher or should be increased;

   b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention

**Response:**

24.    In regard to the malicious prosecution claims brought against Defendant Cremeens please state if such claim is brought

   a.    under state law;

   b.    under federal law.

**Response:**

25    Do you intend to call an expert witness in the trial of the case, including but not limited to, any medical provider who will testify as to any condition alleged to be attributable to the acts of the individual Defendant; and

   a.    if so, state the name and address of each such expert witness;

   b.    the subject matter about which each such expert witness is expected to testify;

   c    the substance of the facts and opinions to which each such expert witness is expected to testify, including but not limited to, the grounds of each such opinion.

9

**Response:**

Respectfully submitted,

WESLEY ROMINE (ROM002)
ONE OF THE ATTORNEYS FOR
DEFENDANT G.C. CREMEENS

OF COUNSEL:
MORROW, ROMINE & PEARSON, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:  (334) 262-7707
Facsimile:  (334) 262-7742
Email:      wromine@mrplaw.com
            rsmorrow@mrplaw.com
            jhpearson@mrplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2008, I have served the foregoing documents to the following via U.S. Mail, postage prepaid:

Hon. Fred F. Bell
1015 south McDonough Street
Montgomery, AL 36104

Hon. Kimberly O. Fehl
City of Montgomery Legal Division
P.O. Box 1111
Montgomery, AL 36101-1111

Respectfully submitted,

WESLEY ROMINE (ROM002)
One of the Attorneys for Defendant
L.C. Cremeens
Morrow, Romine & Pearson, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:   (334) 262-7707
Facsimile:    (334) 262-7742
Email:         wromine@mrplaw.com

11

DEFENDANT'S
EXHIBIT
tabbies
*15*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| TIMOTHY CRENSHAW, et al | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CASE NO. 2:07-cv-1035-MEF |
| | ) |
| THE CITY OF MONTGOMERY, et al, | ) |
| | ) |
| Defendants. | ) |

**TIMOTHY CRENSHAW'S RESPONSE TO DEFENDANT
CREMEENS' DISCOVERY REQUESTS**

COMES NOW Timothy Crenshaw and responds to the Defendant Cremeens'

discovery requests.

**REQUEST FOR ADMISSIONS**

1.    Request for Admission # 1.  Response:    Admit

2.    Request for Admission # 2.  Response:    Deny

3.    Request for Admission # 3.  Response:    Admit

4.    Request for Admission # 4   Response:    Deny

5.    Request for Admission # 5   Response:    The Request calls for a legal
conclusion. I do not possess the legal skill to admit or deny.   Therefore, I Deny
the Request as written.

6.    Request for Admission # 6.  Response:    The    Request    seeks    general
information on establishments about which I do not have knowledge.   I am
without sufficient knowledge to admit or deny.  Therefore, I Deny the Request as
written.

7.    Request for Admission # 7.  Response:    The    Request    seeks    general
information on establishments about which I do not have knowledge.   I am
without sufficient knowledge to admit or deny.  Therefore, I Deny the Request as
written.

8.    Request for Admission # 8.  Response:    Deny

9.    Request for Admission # 9.    Response:    Admit.

## FIRST SET OF INTERROGATORIES

1.    Interrogatory # 1.    Response:    No

2.    Interrogatory # 2    Response:    I make no such contention

3.    Interrogatory # 3    Response:    See response Interrogatory # 2. No response is required.

4.    Interrogatory # 4    Response:    I make no such contention

5.    Interrogatory # 5.    Response:    See response to Interrogatory # 4. No response is required

6.    Interrogatory # 6.    Response:    I do not know if the acts of Mr. Cremeens in arresting or charging the plaintiff were or were not within his discretionary function as a law enforcement.

7.    Interrogatory # 7.    Response:    I have not made the allegation that "white establishments that serve alcohol have not been charged or prosecuted with being over capacity."

8.    Interrogatory # 8    Response:    See response to Interrogatory #7

9.    Interrogatory # 9.    Response:
      a.    I was not responsible for any overcrowding at the Diamonds Club.
      b.    Kent Crenshaw; the owner of the Diamonds Club. 5050 Narrow Lane Road, Montgomery, Alabama. Kent Crenshaw is not employed

10.    Interrogatory # 10.    Response:    To my knowledge, no.

11.    Interrogatory # 11.    Response:
       a.    I do not know that, as a fact, the Diamonds was over capacity. The patrons were never counted in my presence.

       b.    I do not have any witnesses to support my contention that the I do not know, as a fact, that the Diamonds was over capacity and that the patrons were never counted in my presence

12.    Interrogatory # 12.    Response:    Employee-Disc Jockey Helper

13.    Interrogatory # 13.    Response:
       a.    Between $12,000.00 and $15,000.00

b.     Approximately $7,500.00

14.   Interrogatory # 14.    Response:    Lost income for Timothy Crenshaw:
$500.00

15.   Interrogatory # 15.    Response:    None

16.   Interrogatory # 16.    Response:    None

17.   Interrogatory # 17.    Response:    See the various complaints that are in the
possession, custody, and control of the City of Montgomery. Mr. Cremeens had
not observed me violate any criminal law. Yet he wrote a complaint. On two
different occasions he charged me with overcrowding. After he learned that
overcrowding was not a criminal offense; he still attempted to add facts to support
a claim of reckless endangerment. Each time, additional "facts" were added to
support his claims; these additional facts were not stated in the original complaint.

18.   Interrogatory # 18,    Response: See response to Interrogatory #17.
a.     Mr. Cremeens knew that I had not violated any criminal laws. He had no
cause to arrest Timothy Crenshaw; yet he did. After he and the City realized that
over crowding was not a criminal offense, he reconstructed the complaint to
allege reckless endangerment

b.     Kent Crenshaw; see response to Interrogatory # 9.

19.   Interrogatory # 19.    Response:
a.     In court, Mr. Cremeens stated that the only persons who had been charged
with reckless endangerment were those persons charged during the 2005
Thanksgiving Holiday at the Diamonds, Rose, and the Cotton Club because they
had challenged the him and the City on the overcrowding charge
b.     Kent Crenshaw, the owner of the Diamonds

20.   Interrogatory # 20.    Response:    I make no such contention

21.   Interrogatory # 21.    Response:    No response is required.

22.   Interrogatory # 22.    Response:    State Law.

23.   Interrogatory # 23.    Response:    I did not.

24.   Interrogatory # 24.    Response:    At this juncture, my attorney has not stated
that he would call an expert. If he does, I will provide this information to the
Defendants immediately

3

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Done this _____ day of _____ 2008

Timothy Crenshaw

4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TIMOTHY CRENSHAW, et al                )
                                       )
        Plaintiffs,                    )
                                       )
vs.                                    )CASE NO. 2:07-cv-1035-MEF
                                       )
THE CITY OF MONTGOMERY, et al,         )
                                       )
        Defendants.                    )

## KENT CRENSHAW'S RESPONSE TO DEFENDANT CREMEENS' DISCOVERY REQUESTS

COMES NOW Kent Crenshaw and responds to the Defendant Cremeens' discovery requests

## REQUEST FOR ADMISSIONS

1    Request for Admission # 1.  Response:    Admit

2    Request for Admission # 2.  Response:    Deny

3    Request for Admission # 3   Response:    Admit

4.   Request for Admission # 4   Response:    Deny

5.   Request for Admission # 5   Response:    The Request calls for a legal conclusion. I do not possess the legal skill to admit or deny.  Therefore, I Deny the Request as written

6    Request for Admission # 6   Response:    The    Request    seeks    general information on establishments about which I do not have knowledge.  I am without sufficient knowledge to admit or deny.  Therefore, I Deny the Request as written.

7.   Request for Admission # 7.  Response:    The    Request    seeks    general information on establishments about which I do not have knowledge   I am without sufficient knowledge to admit or deny.  Therefore, I Deny the Request as written

8.   Request for Admission # 8.  Response:    Deny

9.      Request for Admission # 9.    Response:      Admit

# FIRST SET OF INTERROGATORIES

1.      Interrogatory # 1.      Response:      No

2.      Interrogatory # 2.      Response:      I make no such contention.

3.      Interrogatory # 3.      Response:      See response Interrogatory # 2.

4.      Interrogatory # 4      Response:      I make no such contention

5.      Interrogatory # 5.      Response:      See response to Interrogatory # 4. No
        response is required.

6.      Interrogatory # 6.      Response:       I do not know.

7.      Interrogatory # 7      Response:      I have not made the allegation that "white
        establishments that serve alcohol have not been charged or prosecuted with being
        over capacity."

8.      Interrogatory # 8.      Response:      See response to Interrogatory #7

9.      Interrogatory # 9.      Response:
        a      Timothy Crenshaw was not responsible for any overcrowding at the
               Diamonds Club
        b      Timothy Crenshaw. Employed by Best Glass Co, 215, Bainbridge Ct.,
               Montgomery, Alabamaa

10.     Interrogatory # 10      Response:      To my knowledge, no

11.     Interrogatory # 11      Response:
        a.      I do not know that, as a fact, the Diamonds was over capacity. The
                patrons were never counted in my presence

        b.      I do not have any witnesses to support my contention that the I do not
                know, as a fact, that the Diamonds was over capacity and that the patrons
                were never counted in my presence.

12.     Interrogatory # 12.      Response:      Kent Crenshaw, owner; Timothy Crenshaw,
        Disc Jockey Helper

13.     Interrogatory # 13.      Response:
        a.      Between $12,000.00 and $15,000.00
        b.      Approximately $7,500.00

2

14.     Interrogatory # 14.     Response:     Timothy Crenshaw: Lost income $500.00

15.     Interrogatory # 15.     Response:     None

16.     Interrogatory # 16.     Response:     None

17.     Interrogatory # 17.     Response:     See the various complaints that are in the possession, custody, and control of the City of Montgomery. Mr. Cremeens had not observed Timothy Crenshaw violate any criminal law. Yet he wrote a complaint. On two different occasions he charged Timothy Crenshaw with overcrowding. After he learned that overcrowding was not a criminal offense; he still attempted to add facts to support a claim of reckless endangerment. Each time, additional "facts" were added to support his claims; these additional facts were not stated in the original complaint.

18.     Interrogatory # 18.     Response: See response to Interrogatory #17.
          a.     Mr. Cremeens knew that I had not violated any criminal laws. He had no cause to arrest Timothy Crenshaw; yet he did. After he and the City realized that over crowding was not a criminal offense, he reconstructed the complaint to allege reckless endangerment.

          b     Tim Crenshaw; see response to Interrogatory # 9.

19.     Interrogatory # 19.     Response:
          a.     In court, Mr. Cremeens stated that the only persons who had been charged with reckless endangerment were those persons charged during the 2005 Thanksgiving Holiday at the Diamonds, Rose, and the Cotton Club because they had challenged the him and the City on the overcrowding charge
          b.     Timothy Crenshaw; see response to Interrogatory # 9.

20.     Interrogatory # 20.     Response:     I make no such contention.

21.     Interrogatory # 21.     Response:     No response is required

22.     Interrogatory y # 22     Response:     State Law

23.     Interrogatory # 23.     Response:     I did not.

24.     Interrogatory # 24.     Response:     At this juncture, my attorney has not stated that he would call an expert If he does, I will provide this information to the Defendants immediately.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief

Done this _____ day of _____ 2008

_____

Kent Crenshaw

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Done this _____11th_____ day of _____May_____ 2008

Kent Crenshaw

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TIMOTHY CRENSHAW, and          )
KENT CRENSHAW, as owner of     )
the DIAMONDS CLUB,             )
                               )
    Plaintiffs,         )
                               )    CIVIL ACTION NO. **2:07cv1035-MEF**
                               )
vs.                            )
                               )
THE CITY OF MONTGOMERY, and    )
LT. G.C. CREMEENS,             )
                               )
    Defendants.         )

## DEFENDANT G.C. CREMEENS' FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFFS TIMOTHY CRENSHAW AND KENT CRENSHAW AS OWNER OF DIAMONDS CLUB

Pursuant to Rule 36, Federal Rules of Civil Procedure Defendant requests that

Plaintiffs, **separately and severally** admit or deny the following request for admissions:

1.    That Plaintiff Kent Crenshaw has pled guilty to overcrowding or over capacity

of the Diamonds Club on occasions prior to November 24, 2005.

**Response:**


2.    That Plaintiff Timothy Crenshaw has pled guilty to overcrowding or over

capacity of the Diamonds Club on occasions prior to November 24, 2005

**Response:**


3.    That the occupancy of patrons designated by the City of Montgomery for

Diamonds Club on November 24, 2005 was 299.

**Response:**

4.    That on November 24, 2005 the number of patrons in the Diamonds Club exceeded the occupancy of 299 designated for that establishment by the City of Montgomery.

**Response:**

5.    That the decision by law enforcement to charge or arrest employees of a facility that is overcrowded or over capacity for its patrons is a discretionary function.

**Response:**

6.    That overcrowding or over capacity of patrons creates a significant risk to the health and safety of the patrons of an establishment.

**Response:**

7.    That overcrowding or over capacity of patrons presents certain fire hazards to the patrons of an establishment

**Response:**

8.    That Plaintiff Timothy Crenshaw was responsible for maintaining the properly designated capacity of the Diamonds Club on November 24, 2005.

**Response:**

9.    That Plaintiff Kent Crenshaw was responsible for maintaining the properly

2

designated capacity of the Diamonds Club on November 24, 2005

      **Response:**

                    Respectfully submitted,

                    *(signature)*

                    WESLEY ROMINE (ROM002)
                    ONE OF THE ATTORNEYS FOR
                    DEFENDANT G.C. CREMEENS

OF COUNSEL:
MORROW, ROMINE & PEARSON, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:  (334) 262-7707
Facsimile:  (334) 262-7742
Email:  wromine@mrplaw.com
        rsmorrow@mrplaw.com
        jhpearson@mrplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2008, I have served the foregoing documents to the following via U S Mail, postage prepaid:

Hon. Fred F. Bell
1015 south McDonough Street
Montgomery, AL 36104

Hon. Kimberly O. Fehl
City of Montgomery Legal Division
P.O. Box 1111
Montgomery, AL 36101-1111

Respectfully submitted,

WESLEY ROMINE (ROM002)
One of the Attorneys for Defendant
L.C. Cremeens
Morrow, Romine & Pearson, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:    (334) 262-7707
Facsimile:    (334) 262-7742
Email:        wromine@mrplaw.com

4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TIMOTHY CRENSHAW, and<br>KENT CRENSHAW, as owner of<br>the DIAMONDS CLUB,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE CITY OF MONTGOMERY, and<br>LT. G.C. CREMEENS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO.  2:07cv1035-MEF<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT G.C. CREMEENS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS TIMOTHY CRENSHAW AND KENT CRENSHAW AS OWNER OF DIAMONDS CLUB

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant G.C. Cremeens propounds the following interrogatories to the Plaintiffs Timothy Crenshaw and Kent Crenshaw as owner of the Diamonds Club to be answered **separately and severally** within thirty (30) days after service of the interrogatories

1.    Do you or your attorney or any person acting on your/his behalf have photographs, statements, tape recordings, video tapes or transcription of tape recording(s) of or from any individual Defendant or any official, employee or agent of the City of Montgomery who Plaintiff or his attorney maintains has significant enough authority to allegedly bind the Defendant(s) by his or her statements or actions?

a.    If so, state the name, title or position(s) and present place of employment of the individual(s) who gave the statement or whose conversation was taped or recorded or videotaped or photographed;

b.    state the name, address and present place of employment of the

person to whom the statement was given or who participated or took part in the taped or recorded conversation or videotaping or photography.

**Response:**

2.    Is it the contention of the Plaintiff(s) that overcrowding or excess capacity of patrons in the Diamonds Club does not create a significant risk to the health and safety of the patrons?

**Response:**

3    If the answer to the preceding interrogatory is in the affirmative, please state:

a    the basis of facts or principle of law which supports that contention;

b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention

**Response:**

4.    Is it the contention of the Plaintiff(s) that overcrowding or excess capacity of patrons in the Diamonds Club does not create certain fire safety hazards to patrons in the establishment?

**Response:**

5.    If the answer to the preceding interrogatory is in the affirmative, please state:

2

a.    the basis of facts or principle of law which supports that contention;

b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention.

**Response:**

6.    In the event that it is the contention of the Plaintiff(s) that the acts of Defendant Cremeens in arresting or charging Plaintiff(s) with being over capacity or overcrowding were not within his discretionary function as a law enforcement officer please state

a    the basis of the facts which support your contention;

b.    any case or other legal authority that supports your contention.

**Response:**

7.    In regard to your contention that white establishments that serve alcohol have not been charged or prosecuted with being over capacity (or overcrowded), please state the following:

a    the basis of the facts which support that contention;

b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention.

**Response:**

3

8.    In regard to your contention that the management of white establishments that serve alcohol have not been arrested, charged or prosecuted for being over capacity (or overcrowded), please identify the name and address of each such establishment.

a.    state the date you allege that such establishment(s) was over capacity or overcrowded but that no action was taken by Defendants against it/them.

**Response:**

9.    In the event that it is your contention that Defendant Cremeens did not have probable cause to arrest or charge Timothy Crenshaw with the operation of an establishment that was over capacity or overcrowded on or about November 24, 2005, please state specifically the following:

a.    describe the basis of the facts or legal principles which demonstrate the absence of probable cause to arrest;

b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention.

**Response:**

10.    On November 24, 2005 was the Diamonds Club over its maximum capacity for patrons or overcrowded?

4

**Response:**

11.    In the event the preceding interrogatory is answered in the negative, please state:

      a.    the basis of your contention that the Diamonds Club was not overcrowded or over capacity on said date;

      b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention.

**Response:**

12.    Please state the role in the operation of the Diamonds Club of each individual answering these interrogatories (Timothy Crenshaw and Kent Crenshaw) on November 24, 2005, i.e. manager, doorkeeper, owner, bartender, patron, etc.).

**Response:**

13.    In regard to the claims on behalf of the Diamonds Club that it suffered a revenue loss as a result of being closed after the arrest of Plaintiff Timothy Crenshaw on November 24, 2005, please state the following:

      a    the amount of revenue alleged to have been lost;

    b.  how much in attorneys fees were incurred by Diamonds Club as a result of the closure;

    c.  how much in attorneys fees were incurred by Diamonds Club in defending the charge of or prosecution for overcrowding

**Response:**

    14.  In regard to the claim of Plaintiff Timothy Crenshaw that he was caused to lose money as a result of his arrest on November 24, 2005, please itemize each element of money lost as stated in paragraph 27 of your complaint.

**Response:**

    15.  As a result of any claim for mental anguish that you have arising from the facts alleged in your complaint, please state the name, present address and occupation of each physician, psychiatrist, medical provider, clergyman, counselor or other individual who has assisted or responded to that condition or treated you for it.

**Response:**

    16.  Please state each time that you have been arrested or cited as a result of overcrowding or over capacity of patrons at the Diamonds Club

a.   What was the result of the arrest or citation, i.e. conviction, acquittal,

nolle prosse, etc.

b.   In the event of conviction, did you plead guilty?

**Response:**

17    In regard to your contention in paragraph 25 of your complaint that Defendant

Cremeens "fabricated facts" or added to or changed facts, please state what facts you

alleged to have been fabricated

**Response:**

18.    In regard to your contention that Defendant Cremeens acted maliciously or

knowingly to rob Plaintiffs of their civil rights, please state specifically the following:

a.   describe the basis of facts or principle of law which demonstrates such

malice or that the actions of Cremeens were designed to deprive Plaintiffs of civil rights;

b.   the name, present address and present place of employment of any

individual (either factual or expert) who is a witness to or supports your contention.

**Response:**

19    In regard to paragraph 45 of the complaint in which you alleged that

7

Defendant Cremeens acted to retaliate against Plaintiff Timothy Crenshaw, please state specifically the following:

      a.    describe the basis of the facts or legal principle which demonstrates such retaliation;

      b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention.

**Response:**

20.    Do Plaintiffs contend that the occupancy number for patrons at the Diamonds Club should be higher than that determined by the City of Montgomery

**Response:**

21.    If the answer to the preceding interrogatory is in the affirmative, please state specifically the following:

      a    the basis of the facts or principle of law or code which demonstrates that the capacity should be designated higher or should be increased;

      b.    the name, present address and present place of employment of any individual (either factual or expert) who is a witness to or supports your contention.

**Response:**

8

22.    In regard to the malicious prosecution claims brought against Defendant Cremeens please state if such claim is brought

      a.    under state law;

      b.    under federal law

**Response:**


23.    On November 24, 2005 (or in the early hours of November 25, 2005) did you (or any employee of Diamonds Club) telephone any employee or management of Rose Supper Club to advise employees or management of the Rose Supper Club that Diamonds Club had been closed as a result of being over capacity or overcrowded?

      a.    If so, why did you/they take such action?

**Response:**


24.    Do you intend to call an expert witness in the trial of the case, including but not limited to, any medical provider who will testify as to any condition alleged to be attributable to the acts of the individual Defendant; and

      a.    if so, state the name and address of each such expert witness;

      b.    the subject matter about which each such expert witness is expected to testify;

      c.    the substance of the facts and opinions to which each such expert witness is expected to testify, including but not limited to, the grounds of each such opinion.

**Response:**

Respectfully submitted,

WESLEY ROMINE (ROM002)
ONE  OF  THE  ATTORNEYS  FOR
DEFENDANT G.C. CREMEENS

OF COUNSEL:
MORROW, ROMINE & PEARSON, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:  (334) 262-7707
Facsimile:   (334) 262-7742
Email:        wromine@mrplaw.com
              rsmorrow@mrplaw.com
              jhpearson@mrplaw.com

10

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2008, I have served the foregoing documents to the following via U.S. Mail, postage prepaid:

Hon. Fred F. Bell
1015 south McDonough Street
Montgomery, AL 36104

Hon. Kimberly O. Fehl
City of Montgomery Legal Division
P.O. Box 1111
Montgomery, AL 36101-1111

Respectfully submitted,

WESLEY ROMINE (ROM002)
One of the Attorneys for Defendant
L.C. Cremeens
Morrow, Romine & Pearson, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:    (334) 262-7707
Facsimile:    (334) 262-7742
Email:        wromine@mrplaw.com

11